611 A.2d 1218

**COMMONWEALTH of Pennsylvania**

v.

**Frederick W. WEIS, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1992.

Filed June 18, 1992.

624

Wilbert H. Beachy, III, Public Defender, Somerset, for appellant.

Carolann A. Young, Asst. Dist. Atty., Somerset, for the Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence entered following appellant's conviction for driving while under the influence of alcohol to a degree which rendered him incapable of safe driving.[1] The following issues are presented for our review: (1) whether appellant is entitled to an arrest of judgment because the verdict was against the sufficiency and weight of the evidence; (2) whether appellant is entitled to a new trial because: (a) the Commonwealth failed to produce expert testimony relating appellant's blood-alcohol level back to the time of the accident, and (b) an accident reconstruction expert, who submitted a report after appellant's trial, concluded that a blown-out tire caused the accident; and (3) whether the trial court erred in refusing to grant appellant's request for a stay or supersedeas of the surrender of his operator's license. For the reasons set forth below, we affirm the judgment of sentence.

Before addressing the merits of appellant's claims, it is necessary to recount the relevant facts of this case. Appellant, Frederick Weis, Jr., was a construction superintendent on a project conducted at Hidden Valley Resort, located in Somerset County, Pennsylvania. After completing his work on October 28, 1988, appellant attended a party that was held at Hidden Valley for the construction employees. Appellant admittedly consumed approximately three seven-ounce beers during the two-hour period in which he was at the party. Appellant left the party at approximately 5:30 p.m. to check on pumps at the construction site. Appellant

1. 75 Pa.C.S.A. § 3731(a)(1).

then proceeded to the Tips Up restaurant where he consumed an entire eight-cut medium-sized pizza and at least three twelve-ounce beers.[2] Appellant remained at the restaurant from approximately 6:00 p.m. until 8:30 p.m. Following the ingestion of his meal, appellant left the restaurant and returned to his weekday residence at Hidden Valley where he showered and placed a telephone call to his family in Pittsburgh, Pennsylvania. At approximately 9:30 p.m., appellant left to socialize with some friends. Because appellant's companions were not at home, appellant decided to return to the Tips Up restaurant to search for them.

In traveling to the restaurant, appellant turned onto State Route 31 and proceeded in an easterly direction. Mr. Robert Ankney, who was also driving in the eastbound lane of Route 31, observed appellant's entry onto the highway in front of the Ankney vehicle. Mr. Ankney decided to pass appellant's truck because appellant was driving at a rate of approximately twenty-five (25) to thirty (30) miles per hour. Mr. Ankney consequently pulled his tractor-trailer into the westbound lane to accomplish this manoeuvre. According to Mr. Ankney, appellant began to accelerate his vehicle as Mr. Ankney began to overtake appellant. In turn, Mr. Ankney increased the speed of his vehicle. While the two vehicles were proceeding down a hill, Mr. Ankney observed appellant's vehicle suddenly cross the center line and collide with the tractor-trailer. Although Mr. Ankney had moved onto the berm of the westbound side of the highway to avoid a collision, he lost control of his vehicle. The tractor-trailer traveled on the berm and/or westbound lane of the highway for a short distance, then traversed the parking lot of Debbie's Green Meadow Tea Room, a restaurant that was situated on the westbound side of Route 31. Mr. Ankney's vehicle finally stopped after it sheared off a large pine tree which measured eighteen inches in diameter. Ap-

---

**2.** Appellant testified that he drank three twelve-ounce bottles of beer at the restaurant. N.T. 8/31/89 at 53. However, a defense medical expert indicated that appellant would have had to consume approximately four or five twelve-ounce beers in order to attain the blood-alcohol level which he possessed. *Id.* at 251 and 257–258.

pellant's vehicle also crossed the parking lot and stopped in a grassy area behind the restaurant.

Both vehicles sustained extensive damage in the accident and the injured drivers were taken to a hospital for treatment.[3] In investigating the condition of the drivers, Trooper Sandor observed that appellant exuded an odor of alcohol. There was no indication that Mr. Ankney had consumed any alcohol, however. Blood-alcohol tests were performed on appellant while he was receiving treatment at the hospital. The first test, performed at 10:40 p.m., revealed that appellant had a blood-alcohol content of .136%.[4] A second test performed on a sample of whole blood which had been withdrawn at 11:45 p.m. revealed that appellant's blood-alcohol level had decreased to .101%. N.T. 8/31/89 at 247–248, 251 and 252–253. Appellant was subsequently charged with driving while under the influence of alcohol, as defined by the Motor Vehicle Code. *See* 75 Pa.C.S.A. §§ 3731(a)(1) and (a)(4). Appellant was additionally charged with a summary violation of failing to give way to an overtaking vehicle. *See* 75 Pa.C.S.A. § 3303(a)(2).

A jury trial was held from August 30 through September 1, 1989, following which appellant was acquitted of the charge of driving while his blood-alcohol level was *.10%* or more, but convicted of driving while under the influence of alcohol to a degree which rendered him incapable of safe driving. After the entry of the jury verdict, the trial court

3. Appellant's truck was primarily dented on the driver's side. Mr. Ankney's tractor, however, had been severed from the trailer and was utterly demolished. *See* Defendant's Exhibits 4–1 to 4–3 (photographs of appellant's truck); Commonwealth's Exhibits A to D (photographs of tractor-trailer). Appellant was rendered unconscious by the collision and sustained a severe concussion, a dislocated shoulder and minor lacerations. N.T. 8/31/89 at 62. Mr. Ankney's injuries were not described in the certified record.

4. This test result was obtained for medical purposes and apparently only blood serum, *i.e.,* blood from which the red blood cells have been removed, was analyzed rather than whole blood. N.T. 8/30/89 at 251–252. Because a test performed on blood serum will yield a higher reading than one conducted on a sample of whole blood, this reading was adjusted to arrive at a more accurate whole blood equivalent of .114%. *Id.* at 252.

acquitted appellant of the summary offense of failing to give way to an overtaking vehicle because no evidence was produced at trial that Mr. Ankney had given a suitable signal of his intent to pass appellant. *See* 75 Pa.C.S.A. § 3303(b) (defining suitable signal as an intermittent flash of high and low headlight beams or an audible signal).

Appellant filed timely post-trial motions which were denied by the trial court. Appellant was subsequently sentenced on March 14, 1991 to a term of forty-eight (48) hours to twelve (12) months' imprisonment.[5] In addition, appellant was directed to immediately relinquish possession of his operator's license to the court clerk for transmission to the Pennsylvania Department of Transportation. Appellant thereafter filed a timely motion for modification of sentence in which he contested the confiscation of his operator's license. Appellant's motion was denied by the lower court. A timely appeal was then initiated with this court.

 Appellant first asserts that he is entitled to an arrest of judgment because the verdict was against the sufficiency and weight of the evidence. With respect to the issue as framed by appellant, we initially note that an arrest of judgment is not the proper form of relief where the verdict is found to be against the weight of the evidence. *See Commonwealth v. Taylor*, 324 Pa.Super. 420, 424–425, 471 A.2d 1228, 1229–1230 (1984) (providing an erudite explanation of the differences between sufficiency and weight of the evidence claims and the tests and relief to be applied for each). Instead, the appropriate remedy is to vacate the judgment of sentence and grant the defendant a new trial. *See id.*

Although appellant appears to have presented challenges to both the sufficiency and weight of the evidence in his statement of the questions involved, further study of appellant's brief discloses that his arguments are directed to the

5. Because appellant expressed his intent to appeal, he was permitted to remain free on bond during the pendency of the appellate proceedings. Consequently, appellant has not served any portion of his sentence.

sufficiency rather than the weight of the evidence. We will therefore only address the merits of appellant's sufficiency claim.[6]

In reviewing the sufficiency of the evidence[,] we are required to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner. The test is whether the evidence, when so viewed, is sufficient to prove every element of the crime beyond a reasonable doubt.

*Commonwealth v. Jarman,* 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992) (citations omitted). *Accord: Commonwealth v. Modaffare,* 529 Pa. 101, 103–104, 601 A.2d 1233, 1234 (1992).

Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of the witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

6. Even were we to examine appellant's challenge to the weight of the evidence, it does not appear that appellant would be entitled to a new trial on this basis. A new trial may only be ordered on the ground that the verdict is against the weight of the evidence when the jury's verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Commonwealth v. Murray,* 408 Pa.Super. 435, 438, 597 A.2d 111, 113 (1991) (*en banc*), *allocatur denied,* 529 Pa. 668, 605 A.2d 333 (1992). *See also Commonwealth v. Taylor,* 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984) (for similar considerations). The evidence contained in the certified record revealed that appellant admittedly ingested alcohol prior to the accident. N.T. 8/31/89 at 46 and 53. Although appellant presented testimony that he did not exhibit extreme signs of intoxication, appellant's own medical expert testified that alcohol consumption would have affected appellant's mental and physical functioning to some degree. *Id.* at 251–252. Appellant's collision with the tractor-trailer further indicates that appellant's faculties were impaired by his consumption of alcohol. While appellant attempted to demonstrate that the accident occurred because of a blown-out tire or alleged misconduct by Mr. Ankney, the jury did not accept appellant's theory of the accident. The fact that the jury rejected appellant's version of the incident does not render the verdict so shocking or contradictory as to mandate the award of a new trial.

632

*Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986). The evidence presented at trial and appellant's arguments relating thereto will be evaluated in accordance with these principles.

Appellant contends that the evidence was insufficient to sustain his conviction because it failed to establish that he operated his vehicle in an unsafe manner. Appellant's analysis begins with his own theory in which he suggests that the accident was caused by the fact that his left-front tire blew-out prior to impact with Mr. Ankney's tractor-trailer. Appellant also believes that Mr. Ankney's alleged attempt to pass appellant's vehicle in a no-passing zone contributed to the collision.[7] Based upon this theory of the accident, appellant reasons that the Commonwealth should have retained an accident reconstruction expert to investigate the merits of appellant's defense theory. Appellant then concludes that the Commonwealth's failure to present evidence to negate his defense theory renders the Commonwealth's evidence insufficient as a matter of law to sustain the conviction. Aside from a citation to 2 R. Wasserbly, *Pennsylvania Criminal Practice* § 26.02 (rev. April 1992), appellant does not refer us to any authority which would buttress his novel interpretation of the Commonwealth's burden of proof and its alleged duty of investigation in criminal proceedings.

7. Aside from the single assertion that Mr. Ankney's alleged passing violation may have caused the accident, appellant does not further develop this issue. Presumably, appellant wishes us to infer that *if* Mr. Ankney had remained in the eastbound lane and *if* the accident was due solely to an explosion of the tire, then the collision might not have occurred. Appellant's speculation as to what might have happened if Mr. Ankney had not attempted to pass, even if accepted, is only relevant insofar as it may affect Mr. Ankney's ability to recover in the event that civil proceedings are instituted against appellant. However, appellant's theory of "what ifs" does not offer any insight as to the manner in which Mr. Ankney's actions induced appellant's vehicle to enter the westbound lane and strike Mr. Ankney's vehicle. Appellant likewise does not describe how Mr. Ankney's alleged misconduct is related to appellant's own criminal conduct. To the extent that Mr. Ankney's actions may have been relevant, it was a matter for the jury to consider in assessing appellant's ability to drive safely in light of his admittedly intoxicated condition.

We have examined the particular provision of the Wasserbly treatise cited by appellant and, notwithstanding appellant's construction thereof, find his reliance thereon to be puzzling as it tends to negate rather than advance his argument. Appellant's defense theory, as described above, falls within the accident category of affirmative defenses. *See* Wasserbly, *supra* § 26.01 (rev. April 1992) (identifying various affirmative defenses). In discussing the Commonwealth's burden with respect to disproving an affirmative defense, Wasserbly explains:

> There is no legal burden on the Commonwealth to establish the absence of an affirmative defense unless the defense is raised during the trial. In other words, for purposes of persuasion and burden of proof, the absence of [an affirmative defense] is not an element of any offense unless the issue is raised at some point during the trial.... When evidence from any source exists to raise an issue relating to an affirmative defense, the burden falls on the Commonwealth to disprove the defense.... The evidence raising the issue of an affirmative defense may come from any source, including the defendant's evidence, defense cross-examination of Commonwealth's witnesses, the Commonwealth's cross-examination of defense witnesses, or the Commonwealth's case in chief.

Wasserbly, § 26.02, *supra* (footnotes omitted). As made clear by Wasserbly, the Commonwealth has no duty to negate an affirmative defense unless and until it has been raised in some manner at trial. Moreover, Wasserbly does not indicate that the Commonwealth must undertake any investigative duties, such as securing the services of an expert, to disprove any and all affirmative defenses which might possibly arise prior to trial. Wasserbly likewise does not require the Commonwealth to produce additional evidence in fulfillment of its burden to negate an affirmative defense once it has been properly raised, as the Commonwealth can certainly rely upon its existing evidence if it believes such evidence sufficient to negate the affirmative

defense. Appellant's reliance upon Wasserbly is therefore misplaced.

Although appellant does not provide us with reference to other authorities, we find the following discussion set forth by our Supreme Court to be instructive.

In any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime.... This burden is neither increased nor diminished by an attempt by a defendant to disprove [an] element [of the crime].... Whether the Commonwealth will, in a particular case, elect to carry that burden without introducing evidence to negate the existence of a[n] [affirmative defense], or whether it will seek to introduce such evidence, will be for it to decide; as in every case, the risk of nonpersuasion remains with the Commonwealth.... We emphasize that our insistence upon the Commonwealth's burden to prove beyond a reasonable doubt all elements of the crime does not require it to disprove a negative. Thus, to enable a defendant to seek to negate [an element of the crime], there must be evidence in the case sufficient to place in issue that fact concerning [that element]. Such evidence may be adduced by the defendant as part of his case, or, conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. Once a defendant has come forward with such evidence, or it is in the case otherwise, the Commonwealth, as we have indicated above may introduce testimony to refute it, *but is under no duty to do so.*

*Commonwealth v. Rose (I),* 457 Pa. 380, 389–390, 321 A.2d 880, 884 (1974) (emphasis added). *Accord: Commonwealth v. Rose (II),* 463 Pa. 264, 268–269, 344 A.2d 824, 826 (1975). In his concurring opinion, Chief Justice Jones echoed these sentiments and asserted that "[d]ue process does not require that the Commonwealth disprove affirmative defenses beyond a reasonable doubt." *Commonwealth v. Rose (I),* 457 Pa. at 394, 321 A.2d at 887 (concurring opinion by Jones, C.J.). This court has similarly recognized that "it is

not necessary for the Commonwealth to anticipate and rebut all possible defenses." *Commonwealth v. Shenkin,* 337 Pa.Super. 517, 525, 487 A.2d 380, 384 (1985).

 Application of these principles to the facts of this case persuades us that, contrary to appellant's assessment, the Commonwealth was not required to secure an accident reconstruction expert to investigate and rule out any and all possible defense theories before instituting criminal charges against appellant. Further, the Commonwealth was not required to disprove potential defense theories in its case-in-chief, unless and until an affirmative defense negating a specific element of the crime had been presented. Moreover, once an affirmative defense negating a specific element of the crime was properly raised, the Commonwealth did not have any duty to present additional testimony if it determined that its existing evidence was sufficient to refute the defense. We therefore reject appellant's contention that the evidence was insufficient *per se* because of the Commonwealth's failure to prove that the collision was not due to an accident.

Having found appellant's initial arguments to be without merit, we will nevertheless proceed to evaluate the sufficiency of the evidence presented by the Commonwealth in this case. To sustain appellant's conviction under 75 Pa. C.S.A. § 3731(a)(1), the Commonwealth was required to prove: (1) that appellant drove, operated or was in actual physical control of the movement of his vehicle; (2) while he was under the influence of alcohol to a degree which rendered him incapable of safe driving. *Commonwealth v. Griscavage,* 512 Pa. at 544, 517 A.2d at 1258. With respect to these elements, it was undisputed that appellant was the operator of the vehicle at the time of the accident. Thus, the first element is not at issue here. To establish the second element, the Commonwealth first presented the testimony of Mr. Ankney and Trooper Sandor, who investigated the accident.

 Mr. Ankney testified that he was in a passing zone when he initially attempted to overtake appellant's vehicle.

N.T. 8/30/89 at 19. The photographs of the accident site corroborated Mr. Ankney's testimony in that the zone changed from a passing to a no-passing zone at the western edge of the parking lot of Debbie's Green Meadow Tea Room. *See* Defendant's Exhibit No. 2 and Unmarked Photographs. Thus, Mr. Ankney was lawfully permitted to pass appellant's vehicle when he initially pulled into the westbound lane. Mr. Ankney further indicated that he had approximately one-half mile in which to complete his pass, but was prevented from doing so by appellant's actions. N.T. 8/30/89 at 20 and 86. As he attempted to overtake appellant, Mr. Ankney testified that appellant's vehicle crossed over the centerline, entered the westbound lane in which Mr. Ankney was travelling, and ultimately struck Mr. Ankney's vehicle. *Id.* at 21, 76 and 78–79.

Trooper Sandor testified as to his observations of appellant and the accident site. Because the accident rendered appellant unconscious, Trooper Sandor was unable to detect the typical indicia associated with an intoxicated state. However, he did note a moderate odor of alcohol emanating from appellant. *Id.* at 95 and 163. During his investigation of the accident site, Trooper Sandor also observed skid marks and tire tracks created by the vehicles and concluded that appellant's vehicle had crossed the centerline into the westbound lane and collided with Mr. Ankney's tractor-trailer. *Id.* at 97–98; N.T. 9/1/89 at 82–83. Trooper Sandor's determinations regarding the placement of appellant's vehicle remained unshaken despite vigorous cross-examination by defense counsel. N.T. 9/1/89 at 90–91, 94, 97–98, 100, 102, 104, 106, 111 and 114.

In addition to this testimony, the Commonwealth introduced the blood-alcohol test results which revealed that appellant had respective blood-alcohol levels of .114% and .101%, one and two hours after the accident. These test results indicated that appellant's blood-alcohol level had peaked at some point before the second sample had been withdrawn, and thus, was declining or decreasing when the second sample was taken. N.T. 8/30/89 at 253–254. More-

over, the Commonwealth's witness indicated that appellant's rate of dissipation of alcohol was between .013% and .015%. *Id.* at 253; N.T. 9/1/89 at 129. Using these dissipation rates, appellant's blood-alcohol level at the time of the accident was calculated to be between .127% and .129%.[8] N.T. 9/1/89 at 129.

■ To negate the Commonwealth's evidence, appellant introduced the testimony of various friends, family members and coworkers who either spoke with or observed appellant before he left his residence at 9:30 p.m. N.T. 8/31/89 at 115–194. All of these witnesses testified that appellant did not exhibit the classical signs of intoxication and that appellant appeared to act and speak in a normal manner. However, the absence of extreme impairment or other tangible behavior is not necessarily dispositive of appellant's ability to operate his vehicle in a safe manner. *Commonwealth v. Griscavage,* 512 Pa. at 545, 517 A.2d at 1258. In fact, appellant's own medical expert, Dr. Spiker, indicated that at the blood-alcohol level appellant possessed at the time of the accident, which he estimated to be between .08% and .09%, appellant's judgment, perception, coordination, reflexes and reaction time would have been affected to some extent. N.T. 8/31/89 at 251–252. Although Dr. Spiker was unable to express an opinion as to the precise degree to which appellant's blood-alcohol impinged upon his ability to drive safely, he admitted that a blood-alcohol reading of .10% was generally accepted as the point at which 100 percent of the population would be impaired. *Id.* at 263. *See also Commonwealth v. Gonzalez,* 519 Pa. 116, 127 n. 3, 546 A.2d 26, 31 n. 3 (1988) (recognizing that it is now universally accepted that a person with a blood-alcohol percentage of .10 should not be driving). Dr. Spiker further stated that as an individual's blood-alcohol level increased, the individual's degree of im-

8. Assuming the dissipation rate was .013%, appellant's blood-alcohol level at the time of the accident is mathematically calculated to be .127%. If the greater dissipation rate of .015% is utilized, appellant's blood-alcohol level at the time of driving would commensurately increase to .129%.

pairment would likewise increase. N.T. 8/31/89 at 262–263. Appellant additionally attempted to demonstrate, primarily through his cross-examination of Trooper Sandor, that the skid marks and tire tracks depicted in the photographs and observed by Trooper Sandor were attributable to the left rather than right front tire. Thus, appellant sought to establish that appellant's sudden swerve into the path of Mr. Ankney's vehicle could have been caused by the explosion of the left-front tire on appellant's vehicle.

Although the Commonwealth did not present additional witnesses to rebut appellant's defense theory, Trooper Sandor stated that the skid marks were inconsistent with the type of mark which would have been observed if the tire had been deflated prior to the collision. N.T. 9/1/92 at 94, 100, 102 and 111. In fact, Trooper Sandor testified that the left-hand tire was still inflated when he checked the vehicle immediately after the collision. *Id.* at 111–112. Trooper Sandor further supported his conclusions by indicating that the peculiar pattern found in the skid marks left by appellant's vehicle was consistent with the type of marks which would be made by an inflated tire that is making a sharp turn. *Id.* at 97–98. He also indicated that a deflated tire would have left either a gouge mark on the highway or a different type of mark. *Id.* at 94, 100 and 102. In addition, Trooper Sandor traced the skid marks to tire tracks which went through the grassy area behind the restaurant and observed that they led directly to the right side of appellant's vehicle. *Id.* at 82 and 90–91.

The above evidence, viewed in the light most favorable to the Commonwealth, sufficiently established that appellant drove, operated or was in actual physical control of his vehicle while under the influence of alcohol to a degree which rendered him incapable of driving safely. Appellant admittedly ingested alcohol prior to the accident. While appellant may not have exhibited the typical intoxication symptoms, appellant's own expert admitted that appellant's judgment and other faculties were affected to some degree by appellant's consumption of alcohol. Further indication

of appellant's inability to drive safely is found in the fact that appellant caused his vehicle to cross the centerline and collide with Mr. Ankney's overtaking vehicle. Although appellant attempted to demonstrate that the accident was caused by a blow-out of his tire, a non-alcohol related factor, it was the responsibility of the jury to evaluate the evidence and determine whether the accident was due to appellant's alcohol consumption or a mechanical defect. In rendering its verdict, the jury obviously disbelieved appellant's speculative and unsubstantiated theory. The jury's rejection of appellant's theory, however, does not render the Commonwealth's evidence insufficient. Under these circumstances, the evidence presented by the Commonwealth adequately supported appellant's conviction under 75 Pa. C.S.A. § 3731(a)(1).

In his second and third issues, appellant contends that the evidence was insufficient to sustain his conviction, or in the alternative, that he was entitled to a new trial because the Commonwealth failed to relate appellant's blood-alcohol level back to the time of the accident in its case-in-chief. In support of his position, appellant relies upon *Commonwealth v. Gonzalez, supra.* We have thoroughly reviewed *Gonzalez* and nowhere therein did the Supreme Court hold that it was necessary for the Commonwealth to relate blood-alcohol test results back to the time of driving to sustain a conviction under 75 Pa.C.S.A. § 3731(a)(1). Rather, the Supreme Court held that if the defendant was convicted under § 3731(a)(4), the expert witness' testimony was inadmissible for the purpose of relating back the defendant's blood-alcohol level to the time of the accident because the witness did not have the requisite knowledge of particular facts which would enable him to render an opinion with reasonable certainty. *Commonwealth v. Gonzalez,* 519 Pa. at 134, 546 A.2d at 35. However, the Supreme Court indicated that the expert's testimony was admissible with respect to a conviction under § 3731(a)(1) because no specific blood-alcohol level was required to prove a violation of this section, as long as the defendant's blood-alcohol content

exceeded .05%. *Id.,* 519 Pa. at 126 and 134, 546 A.2d at 31 and 35. The Supreme Court further noted that it would have affirmed the defendant's conviction under § 3731(a)(1), despite the fact that the defendant's blood-alcohol level could not be related back to the time of the defendant's driving. *Id.,* 519 Pa. at 135, 546 A.2d at 35.

Although neither the trial court nor the parties had the benefit of the Pennsylvania Supreme Court's recent decisions in *Commonwealth v. Jarman* and *Commonwealth v. Modaffare, supra,* at the time of appellant's trial, these decisions support appellant's arguments to the extent that they require the Commonwealth to present sufficient evidence of a defendant's blood-alcohol level *at the time of driving* to prove a violation of 75 Pa.C.S.A. § 3731(a)(4) beyond a reasonable doubt. *See Commonwealth v. Jarman,* 529 Pa. at 95, 601 A.2d at 1230–1231; *Commonwealth v. Modaffare,* 529 Pa. at 104, 601 A.2d at 1235–1236. Neither of these decisions affords appellant relief, however.[9] In this case, appellant was *acquitted* of the offense arising under § 3731(a)(4) and was only convicted of driving while under the influence of alcohol to a degree which rendered him incapable of driving safely, as defined by 75 Pa.C.S.A. § 3731(a)(1). As recognized by the Supreme Court, it is unnecessary to establish a specific blood-alcohol level to prove a violation of 75 Pa.C.S.A. § 3731(a)(1). *See Commonwealth v. Gonzalez,* 519 Pa. at 126, 546 A.2d at 31.

9. Appellant's arguments might have been more persuasive if appellant had been convicted of violating 75 Pa.C.S.A. § 3731(a)(4). In view of appellant's acquittal on this charge, the sufficiency of the evidence to establish this offense and/or appellant's entitlement to a new trial therefor is moot. *See Commonwealth v. Dorler,* 403 Pa.Super. 150, 152–153, 588 A.2d 525, 526 (1991) (defining mootness and providing that the appellate courts will not decide moot or abstract questions). While we will not deem an issue to be moot where it is capable of repetition yet will evade review, such is not the case here. *See id.* We presume that the Commonwealth is aware of the Supreme Court's recent decisions in *Commonwealth v. Jarman* and *Commonwealth v. Modaffare* and that it will conform its prosecution of future drunk driving cases accordingly. Thus, the contentions raised by appellant relating to the Commonwealth's proof of the § 3731(a)(4) offense, and the trial court's denial of his motions for demurrer and judgment of acquittal as to this offense are all moot.

*Commonwealth v. Jarman* and *Commonwealth v. Modaffare* do not overrule *Commonwealth v. Gonzalez* nor do they otherwise require the Commonwealth to establish a particular blood-alcohol level to sustain a conviction under 75 Pa.C.S.A. § 3731(a)(1). Because it was unnecessary for the Commonwealth to establish a blood-alcohol level in excess of .10% for a conviction under § 3731(a)(1), the evidence was not rendered insufficient nor is appellant entitled to a new trial on this basis.

In the remaining portion of his third issue, appellant contends that he is entitled to a new trial because of his belated discovery of additional evidence after the conclusion of the trial. A new trial may be granted on this basis only if the new evidence:

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence;

(2) is not merely corroborative or cumulative;

(3) will not be used solely for impeaching the credibility of a witness; and

(4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Nocero,* 399 Pa.Super. 346, 355–356, 582 A.2d 376, 380 (1990), *allocatur denied,* 527 Pa. 643, 593 A.2d 416 (1991), *quoting Commonwealth v. Hunter,* 381 Pa.Super. 606, 618, 554 A.2d 550, 555 (1989). *See also Commonwealth v. McCracken,* 373 Pa.Super. 90, 100, 540 A.2d 537, 541–542 (1988), *affirmed per curiam,* 524 Pa. 332, 572 A.2d 2 (1990) (same). Moreover, "absent a clear abuse of discretion, the trial court's refusal to grant a new trial on the basis of after-discovered evidence will not be disturbed on appeal." *Commonwealth v. Nocero, supra.* We will review appellant's arguments in accordance with this standard.

The after-discovered evidence in this case relates to a report [10] submitted by an accident-reconstruction expert

10. This report has been included as part of the certified record.

who concluded that the skid marks made by appellant's vehicle were consistent with a deflated left-front tire, rather than an inflated right front tire. Thus, appellant seeks a new trial to establish that his vehicle remained in its proper lane of travel prior to the accident and that the collision was caused by a blow-out of his left front tire prior to impact with Mr. Ankney's vehicle. Appellant asserts that the discovery of this report satisfies the above requisites. Although we agree with appellant that the second and arguably the fourth prongs of the test have been satisfied,[11] he has failed to establish either the first or the third elements.

■ With respect to the first requirement, appellant argues that the report could not have been obtained prior to trial because photographs depicting the skid marks did not become available until the close of the second day of trial.[12] While the expert undeniably based his conclusions upon these particular photographs, appellant does not explain why he was required to rely upon the Commonwealth's photographs. The location of the accident involved an unrestricted state highway that was equally available to all of the parties. In fact, appellant visited the scene of the accident following his release from the hospital and took measurements of various skid marks. N.T. 8/31/89 at 71–86. Thus, appellant had ample opportunity to obtain his own photographs of the skid marks which he could have submitted to an accident reconstruction expert well in ad-

11. Appellant has satisfied the second requirement because the report is not merely cumulative or corroborative of existing evidence to the extent that no other evidence was introduced to support appellant's theory that the skid marks were in fact caused by a deflated tire which had exploded prior to impact. *Compare Commonwealth v. McCracken,* 373 Pa.Super. 90, 100–101, 540 A.2d 537, 542 (1988) (finding after-discovered evidence to be cumulative of the defendant's defense theory where extensive evidence on this theory had been presented at trial). The fourth prong is arguably satisfied since the expert's opinion would considerably strengthen appellant's defense theory, although this evidence, in and of itself, does not prove or disprove that appellant committed the offense for which he was convicted.

12. These photographs were taken by Mr. Ankney's son the day after the accident. N.T. 8/31/89 at 299; N.T. 9/1/89 at 55. The Commonwealth indicated that it was unaware of the existence of the photographs until the second day of trial. *Id.* at 297–298.

vance of trial. In addition to appellant's failure to take his own photographs of the collision site, appellant does not indicate why he could not have submitted the existing evidence, such as his own measurements or the photographs of his vehicle which were taken after the accident, to an accident reconstruction expert. Appellant also could have requested a continuance of the trial upon learning of the existence of the photographs, but chose not to do so. Under these circumstances, appellant has not offered sufficient excuse as to why the accident reconstruction expert's opinion could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence. Appellant therefore has failed to comply with the first prong of the test.

In support of the third element, appellant suggests that the evidence would not be introduced for the sole purpose of impeaching the credibility of either Mr. Ankney or Trooper Sandor because neither of these individuals was an accident reconstruction expert. The essence of appellant's ridiculous reasoning is that an expert witness' opinion does not impeach a contradictory opinion expressed by a less-qualified expert or non-expert witness on the same issue or fact. This is a distinction without a difference. Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment, regardless of the status of the witnesses as experts or laymen. *See, e.g.*, L. Packel & A. Poulin, *Pennsylvania Evidence*, § 608 and § 608.10 (1987) (discussing impeachment by contradiction).

More importantly, appellant does not enlighten us as to what other purpose would be served by the introduction of the accident reconstruction's opinion, except to note that this testimony would establish the truth of how the accident occurred. While appellant's claim is undoubtedly true, the quest for truth is presumably the object of all litigation and is a matter which is to be determined by the trier-of-fact. It does not advance our present inquiry, however. Assuming that appellant's accident reconstruction expert would testify

to the same conclusions outlined in his report, the only conceivable purpose in introducing his testimony would be to contradict the testimony offered by Trooper Sandor and Mr. Ankney regarding the placement of appellant's vehicle prior to the accident and the source of the tire that caused the skid marks and tire tracks. Because the evidence would be offered solely for purposes of impeachment by contradiction, the third element has not been met.

Appellant's final claim relates to the trial court's refusal to grant his request for a stay or supersedeas of the suspension of his operator's license.[13] The crux of appellant's argument is that he should be able to retain his operating privileges during the pendency of an appeal from the criminal conviction which gave rise to the suspension. Appellant again does not refer us to any authority which would support his position. While we empathize with the hardship caused by the loss of his driving privileges, appellant is not entitled to relief.

We begin with a review of the relevant provisions of the Vehicle Code and the authorities relating thereto. In this case, appellant was convicted of driving while under the influence of alcohol to a degree which rendered him incapable of driving safely. Appellant was therefore subject to a mandatory suspension of his operating privileges for a period of twelve (12) months. 75 Pa.C.S.A. § 1532(b)(3).[14] Upon conviction for this offense, appellant was required to surrender his license to the trial court and his suspension would become effective as of the date of surrender. 75 Pa.C.S.A. § 1540(a) and § 1541(a). Where an individual's operating privileges have been suspended by the Department of Transportation, he or she may appeal the suspension to the appropriate court. 75 Pa.C.S.A. § 1550(a). In hearing the appeal, the trial court only has the discretion to

13. We note that appellee has not responded to this argument in its brief.

14. This statute was amended by the Act of May 30, 1990, P.L. 173, No. 42, § 3 and the Act of July 10, 1990, P.L. 356, No. 83, § 6. The amendments do not affect our analysis of the supersedeas issue.

determine whether the aggrieved party is in fact the person whose operating privilege is subject to suspension and whether the suspension was properly imposed by the department. 75 Pa.C.S.A. § 1550(c). *See also Commonwealth, Department of Transportation v. Johnson*, 144 Pa.Commw. 599, 660, 601 A.2d 1339, 1340 (1992) and *Commonwealth, Department of Transportation v. Russo*, 96 Pa.Commw. 187, 189, 506 A.2d 1349, 1350 (1986) (discussing the limited inquiry in a suspension hearing). However, the trial court's discretion is more restricted in cases involving a mandatory suspension because the suspension must be upheld once the trial court finds that the individual was convicted of the crime which led to the suspension. *Commonwealth, Dept. of Transp. v. Russo, supra*. In making this limited determination, the trial court may not inquire into the merits of the underlying criminal conviction. *Commonwealth v. Bursick*, 526 Pa. 6, 12, 584 A.2d 291, 294 (1990); *Commonwealth, Dept. of Transp. v. Johnson, supra*. Rather, the trial court can only ascertain whether there was a conviction and whether the department acted in accordance with the applicable law by imposing the suspension. *Commonwealth, Department of Transp. v. Johnson, supra*.

Application of these provisions and considerations compels us to conclude that appellant's attempt to utilize the appeal procedure set forth in 75 Pa.C.S.A. § 1550 was premature and that an appeal of the suspension would not have resulted in the grant of relief. Following the close of his sentencing hearing, appellant was directed to surrender his operator's license to the court clerk. Sentencing Hearing Transcript, 3/14/91 at 6–7. Appellant's suspension thus became effective on that date. 75 Pa.C.S.A. § 1540(a) and § 1541(a). Although appellant's suspension became effective, the Department of Transportation had not received notice of appellant's conviction, and therefore, could not have formally suspended appellant's operating privileges or notified appellant of this event. Thus, an appeal from the suspension to the trial court would have been interlocutory

because there was no official action by the Department of Transportation which could properly have been the subject of an appeal at this time. The trial court therefore did not err in disallowing appellant's appeal from the surrender of his license.

Even if it is assumed that an appeal would have been appropriate at this stage of the proceedings, appellant would not have been able to retain his driving privileges. As indicated above, the trial court's scope of inquiry is extremely narrow in mandatory license suspension cases where the suspension results from a criminal conviction. *See Commonwealth, Dept. of Transp. v. Johnson, supra; Commonwealth, Dept. of Transp. v. Russo, supra;* 75 Pa.C.S.A. § 1550(c). Because there is no question that appellant was convicted of a vehicular offense which required the mandatory suspension of his license, an appeal from the suspension would not have resulted in the restoration of appellant's operating privileges. Further, an appeal of the license suspension would not have entitled appellant to a supersedeas or stay of the suspension during the pendency of an appeal to the appellate courts. *See* 75 Pa.C.S.A. § 1541(a) (permitting the department to grant a six (6) month delay in the commencement of the suspension upon the request of the aggrieved party) and § 1550(b) (which only provides for a limited supersedeas of a suspension by the department until the trial court makes a final determination). *See also In re: Appeal of Revocation of Operating Privileges of Patchel,* 133 Pa.Commw. 270, 272, 575 A.2d 966, 967 (1990) (discussing the limited supersedeas authorized by § 1550).

Although appellant acknowledges the procedure outlined in the Vehicle Code, he contends that an individual who must surrender his license and wait until notification of the suspension by the department is unfairly penalized by suffering the loss of operating privileges which could theoretically be restored after an appeal. Appellant's argument lacks merit. In enacting the Vehicle Code, the legislature has determined that those individuals convicted of driving

while under the influence of alcohol must forfeit their driving privileges for a specific period of time. Neither the trial court, the Department of Transportation nor the appellate courts have the power to alter or delay the imposition of this penalty beyond the periods prescribed by the legislature. *See* 75 Pa.C.S.A. § 1541(a); *In re: Appeal of Revocation of Operating Privileges of Patchel, supra; Commonwealth, Dept. of Transp. v. Russo, supra.* Appellant's driving privileges were suspended upon the date of his conviction. *See* 75 Pa.C.S.A. § 1540(a) and § 1541(a). Appellant therefore no longer possessed these privileges and it is specious to suggest that an appeal under § 1550 of the Vehicle Code would have resulted in the restoration of his operator's license.

 Appellant additionally asserts that even if he could not immediately appeal the surrender of his driver's license, he was nevertheless entitled to a supersedeas of the suspension during the pendency of an appeal of his underlying criminal conviction to this court. We disagree. The Vehicle Code provides:

> Upon conviction by a court of competent jurisdiction for any offense which calls for mandatory suspension in accordance with section 1532 (relating to revocation or suspension of operating privilege), the court or the district attorney shall require the surrender of any driver's license then held by the defendant and shall forward the driver's license together with a record of the conviction to the department. The suspension or revocation shall be effective upon a date determined by the court or district attorney or upon the date of surrender of the license to the court or district attorney, whichever shall first occur.

75 Pa.C.S.A. § 1540(a). Although this provision vests the trial court or district attorney with discretion to determine the effective date of the suspension, this discretion is limited. The statute directs that the suspension shall be effective upon the date of surrender of the license to the court or upon the date set by the court or district attorney, whichever occurs first. 75 Pa.C.S.A. § 1540(a) and § 1541(a). As a

result, neither the trial court nor the district attorney has the authority to extend the effective date of the suspension beyond the date of conviction, *i.e.,* the date on which sentence is imposed. 75 Pa.C.S.A. § 1540(a) and § 1541(a), *supra.* *See also Commonwealth, Dept. of Transp. v. Russo, supra* (providing that the imposition of sentence constitutes a conviction for purposes of determining whether the suspension of an operator's license was proper). A grant of a supersedeas or stay of the suspension by the trial court would, in effect, extend the effective date of the suspension beyond the date of conviction and is thus impermissible.

Moreover, we previously recognized that the legislature has provided for a limited supersedeas or delay in the commencement of a license suspension. *See* 75 Pa.C.S.A. § 1550(b) (providing for a supersedeas while an appeal from the department is pending in the trial court) and § 1541(a) (which permits the department, upon request by the affected individual, to grant a six month delay in the commencement of the suspension in cases of hardship). The legislature was thus aware of the hardship associated with the loss of driving privileges and ameliorated it to a limited extent. Had the legislature intended to grant additional relief to affected drivers, it would have drafted the statutes accordingly. As the legislature did not do so, we are constrained to apply the statutes as written. Because there is nothing in the record which would indicate that appellant requested the department to grant a six month delay in the commencement of the suspension, and because appellant was not entitled to any other supersedeas or stay of the suspension during the pendency of this appeal, the trial court did not err in refusing to grant appellant's request.

In sum, we have thoroughly reviewed all of appellant's allegations of error in light of the certified record. Because none of appellant's claims warrant the grant of appellate relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.