COMMONWEALTH of Pennsylvania, Appellant,

v.

Peter A. PHILLIPS, Appellee.

Superior Court of Pennsylvania.

Submitted May 12, 1997.

Filed Aug. 19, 1997.

Reargument Denied Oct. 29, 1997.

---

Christopher M. McElynn, Assistant District Attorney, Erie, for Commonwealth, appellant.

James A. Pitonyak, Erie, for appellee.

Before KELLY, J., CERCONE, President Judge Emeritus, and OLSZEWSKI, J.

OLSZEWSKI, Judge.

This case calls upon us to explain the current status of the law concerning the admittance of blood alcohol content (BAC) test results and evidence of impairment in a trial for Driving Under the Influence of Alcohol (DUI) under 75 Pa.C.S.A. §§ 3731(a)(1), (a)(4).

The record reveals the following facts: At 2:45 A.M. on June 6, 1995, appellant Peter A. Phillips was driving a black Jeep when he traveled through a red light at the intersection of West 26th Street and Powell Avenue in Millcreek Township, Erie County. Consequently, Phillips collided with an automobile driven by Kale Schwartz. After Phillips and Schwartz exchanged driver's information, Schwartz watched as Phillips drove his car from the accident scene and parked in the driveway of a house in the 3900 block of West 26th Street. Phillips did not live at the house. Subsequently, Schwartz and his father, Richard, contacted the authorities and accompanied Patrolman Richard Skonieczka, of the Millcreek Police Department, to the accident scene.[1] The trio arrived at the scene at approximately 5:00 A.M. and Schwartz identified Phillips's vehicle still parked in the driveway with Phillips passed out behind the wheel.

The patrolman roused Phillips and immediately detected that appellant was emitting a strong order of alcohol. The officer also

---

1. In its brief to this Court, the Commonwealth alleges that, after the accident, Kale Schwartz proceeded home and informed his father about the incident. The father then decided that the accident should be reported to the authorities and the Schwartzes contacted the Millcreek Police Department. This information, however, is not contained in the official record.

observed that Phillips had glassy, bloodshot eyes and could not maintain his balance. Based upon these observations, Patrolman Skonieczka administered the "one legged stand" and "heel to toe" field sobriety tests to appellant. Phillips failed both and was promptly placed under arrest for DUI. The arrest occurred at approximately 5:35 A.M. After being transported to the Millcreek Police Station for processing, Phillips was videotaped as he again failed the "one legged stand" test. He refused to retake the "heel to toe" test. At 6:22 and 6:24 A.M., Phillips was given breathalyzer tests for which he registered .148% and .146% BAC readings respectively.

On September 22, 1995, an information was filed charging Phillips with Driving Under the Influence of Alcohol pursuant to 75 Pa.C.S.A §§ 3731(a)(1),(a)(4) and (a)(5).[2] After numerous continuances, Phillips was scheduled for trial on October 7, 1996. On the date of trial, however, Phillips filed a motion *in limine* seeking to exclude any evidence of his breath test results and any testimony concerning his behavior and/or physical appearances at the time of his arrest. Phillips argued, in part, that since his BAC did not represent a significant departure from .10% and a significant period of time elapsed between when he last drove and when he was tested, the Commonwealth was required to present expert testimony relating the test results back to the time he was driving before he could be convicted of DUI. Since the Commonwealth did not intend to produce any such relation back evidence, Phillips alleged that the BAC test results were irrelevant and overly prejudicial. The trial court granted the motion *in limine* the same day it was filed.[3] The instant appeal follows.

Our standard of review when the trial court has granted a motion *in limine* against the Commonwealth is as follows:

"A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." [*Commonwealth v. Johnson*, 399 Pa.Super. 266, 269 582 A.2d 336, 337 (1990), *aff'd*, 534 Pa. 51, 626 A.2d 514 (1993)]. Our Court reviews the grant of such motion "by applying the [standard] of review appropriate to the particular evidentiary matter at issue." *Id.* We note that this Court may reverse rulings on the admissibility of evidence only if it is shown that the trial court abused its discretion. *See Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993), *cert. denied*, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994). Further, if in reaching a conclusion the trial court overrides or misapplies the law, "discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Bellini*, 333 Pa.Super. 526, 532, 482 A.2d 997, 999 (1984), quoting *Prescott v. Prescott*, 284 Pa.Super. 430, 435, 426 A.2d 123, 125 (1981).

*Commonwealth v. Surina*, 438 Pa.Super. 333, 337–38, 652 A.2d 400, 402 (1995).

Instantly, the trial court rationalized that "[t]he circumstances of this case illustrate the necessity of producing evidence relating back the BAC test result to the time when [Phillips] was driving to sustain the Commonwealth's burden of proving beyond a reasonable doubt that [Phillips] drove while the amount of alcohol by weight in his blood was .10% or greater." Opinion, 1/6/97 at 4. Consequently, "given the lack of any relation back evidence to establish [Phillips's] BAC at the time he operated his vehicle, [the trial court] granted the ... [m]otion in [l]imine." *Id.* We believe that the trial court misapplied the relevant law in certain respects and, accordingly, abused its discretion in ordering that the evidence be excluded from trial. Consequently, we reverse, in part, the order of October 7, 1995.

**2.** Subsequently, all parties agreed that Phillips could not be prosecuted for violating § 3731(a)(5) due to the section being held unconstitutional by our Supreme Court in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996).

**3.** In his brief to this Court, Phillips alleges that a hearing was held on the motion prior to the trial court's ruling. The record, however, does not reveal that such a hearing took place. Furthermore, after some inquiry, our Prothonotary has informed us that a hearing was not conducted.

In certain respects, the trial court's analysis is accurate. The offense of DUI is set forth, in relevant part, as follows:

§ 3731. **Driving under the influence of alcohol or controlled substance**

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

* * * *

(4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; ...

75 Pa.C.S.A. § 3731(a).

In a recent line of cases, our Supreme Court has sought to clarify the sufficiency of evidence needed to convict a suspect of violating § 3731(a)(4). In *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992) and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), our Supreme Court vacated judgments of sentence on the basis that 75 Pa.C.S.A. § 3731(a)(4) requires the relation back of a BAC test result to the time when the accused was driving. In so holding, the court explained that § 3731(a)(4) is "limited in its focus" as "[i]t makes one's blood alcohol content **while** driving the pivotal issue." *Modaffare, supra* at 104, 601 A.2d at 1235(emphasis original); *Jarman, supra* at 94–96, 601 A.2d at 1230 (emphasis original). The Court focused upon the testimony of the Commonwealth's experts who stated, in each case, that "a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after the drinking has ceased, and that, thereafter, the level declines." *Modaffare, supra* at 105, 601 A.2d at 1235. *See Jarman, supra* at 96–98, 601 A.2d at 1231. The Court reasoned:

The legislature has provided that blood tests conducted after suspected drunk drivers have been stopped will be used as evidence of the suspects' blood alcohol contents while driving. See generally 75 Pa. C.S. § 1547 (chemical testing to determine amount of alcohol). In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been driving, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood alcohol test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was significant, the inference is weakened.

*Modaffare, supra* at 105, 601 A.2d at 1235. *See Jarman, supra* at 94–97, 601 A.2d at 1230–31.[4] The Supreme Court concluded that, in cases where the inference is weak, the Commonwealth must present expert testimony relating the BAC test result back to the time at which the suspect was actually driving. Without this testimony, the suspect's BAC could have been below 0.10% when he/she was driving and could have simply increased above the 0.10% threshold because of alcohol being absorbed into the suspect's blood during the delay prior to testing. Consequently, the BAC test result alone would only enable the jury to "engage in unbridled speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time." *Jarman, supra* at 97, 601 A.2d at 1231. *See Modaffare, supra* at 106–07, 601 A.2d at 1236.

Recently, the Supreme Court has expanded upon its decisions in *Jarman* and *Modaffare*. In *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994), Yarger's BAC test resulted in a reading of 0.18%. The Court found that, because the test result was "significantly above the 0.10% threshold" and the test had been conducted only forty minutes subsequent to his stop for speeding, there was "no reason to require the Commonwealth to present expert testimony" relating the BAC test result back to the time Mr. Yarger was driving. *Id.* at 334, 648 A.2d at

---

4. We note that Jarman's and Modaffare's BAC tests resulted in readings of 0.104% and 0.108%, respectively. Further, Jarman was tested one hour after he had been stopped for a burned-out headlight bulb and Modaffare was tested approximately one hour and fifty minutes after he had struck a parked car.

531. Accordingly, the Commonwealth had "made a *prima facie* case under 75 Pa.C.S.A. § 3731(a)(4)." *Id.*

The following year, the Court explained what had become obvious, *i.e.*, that "the weaker the inference of guilt, the more vital is the necessity for evidence relating back an accused's BAC test result to the time of driving." *Commonwealth v. Loeper*, 541 Pa. 393, 398, 663 A.2d 669, 671 (1995)(quoting *Commonwealth v. Osborne*, 414 Pa.Super. 124, 128, 606 A.2d 529, 531, *alloc. denied*, 531 Pa. 660, 613 A.2d 1209 (1992)). More importantly, however, the Court also spoke as to whether the Commonwealth, when presented with BAC test results that create only a weak inference of guilt, may utilize evidence of impairment, such as slurred speech or blood shot eyes, to supplement the test results in establishing a *prima facie* case under 75 Pa.C.S.A. § 3731(a)(4). The Court concluded:

> We ... find no basis upon which to conclude that evidence beyond that provided by scientific testing may in any manner satisfy the inquiry raised by a charge pursuant to subsection (a)(4) where the Commonwealth is not also advancing a charge pursuant to subsection (a)(1). Because such evidence is not scientific evidence, it cannot make it more probable that an accused possessed a BAC of .10% or greater at the time he operated his motor vehicle where BAC test results alone are insufficient. Rather, it can serve only to prejudice an accused's right to have the prosecution satisfy its burden of proving that he possessed a blood alcohol content of .10% or greater at the time he operated a motor vehicle. Quite simply, given the framework of Section 3731, evidence beyond that provided by scientific BAC testing is not relevant to a determination of whether an accused violated subsection (a)(4).

\* \* \* \*

Accordingly, we hold that where, as in the case *sub judice*, an accused is not defending a charge of violating subsection (a)(1) evidence beyond BAC testing is not only irrelevant, but prejudicial. Appellant's BAC test results alone were insuffi-

cient to establish a violation of subsection (a)(4), and no abundance of impairment evidence could have remedied this short-coming.

*Id.* at 402, 403, 663 A.2d at 673, 674. *See also Commonwealth v. Shade*, 545 Pa. 347, 681 A.2d 710 (1996) (plurality).

With this framework in mind, we now turn to the case at hand. Instantly, we have no trouble finding that the trial court properly concluded that the BAC test results alone were not sufficient to establish a *prima facie* case of a violation of § 3731(a)(4). Phillips's BAC tests resulted in readings of .146% and .148%, which are not significant deviations from the .10% threshold. *See Osborne, supra* at 128, 606 A.2d at 531 ("Ms. Osborne's BAC was determined to be 0.1488 percent when she was tested at the hospital. We deem this reading not to be a substantial departure from 0.10 percent."). Moreover, the tests were taken approximately three hours and forty minutes after he had been last seen driving. This time period is clearly significant. *See Modaffare, supra* (one hour and fifty minute lapse between driving and testing deemed significant); *Jarman, supra* (one hour lapse between driving and testing deemed significant). Based upon these circumstances, the Commonwealth presented a weak inference of guilt and, in order to convict Phillips under subsection (a)(4), would be required to present expert testimony relating the test results back to the period of time when Phillips was driving. *See id.*

[6] While such BAC test results alone may be insufficient to convict under subsection (a)(4), these results cannot be said to be irrelevant. "Evidence which tends to establish some fact material to the case or which tends to make a fact at issue more or less probable is relevant." *Commonwealth v. Foy*, 531 Pa. 322, 325, 612 A.2d 1349, 1351 (1992). Instantly, we cannot say that Phillips's BAC test was taken so long after the time at which he was driving as to render its probative value nought. In *Jarman* and *Modaffare*, the Supreme Court found that such a case does in fact present an inference of guilt, albeit a weak one. Further, we note that the Commonwealth has been given statutory authority to present such results at

trial. In both *Jarman* and *Modaffare,* our Supreme Court observed:

> The legislature has provided that blood tests conducted after suspected drunk drivers have been stopped will be used as evidence of the suspects' blood alcohol contents while driving. See generally 75 Pa. C.S. § 1547 (chemical testing to determine amount of alcohol).

*Modaffare, supra* at 105, 601 A.2d at 1235; *Jarman, supra* at 95–96, 601 A.2d at 1230. More specifically, 75 Pa.C.S.A. § 1547(c) states that

> [i]n any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 ... the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

75 Pa.C.S.A. § 1547(c). *See also* 75 Pa. C.S.A. § 1547(d)(3).

▮▮▮▮ Nevertheless, it is axiomatic that "[r]elevant evidence is subject to exclusion if its probative value is outweighed by the danger of unfair prejudice or confusion." *Foy, supra* at 326, 612 A.2d at 1352. Instantly, it is clear that Phillips's BAC test results, without expert relation back testimony, possess only minimal probative value. Moreover, the danger of confusion is great in this case. By allowing the jury to consider these results alone, the trial court would be inviting the jury to "engage in unbridled speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time." *Jarman, supra* at 97, 601 A.2d at 1231. *See Modaffare, supra* at 106–07, 601 A.2d at 1236. Consequently, we conclude that the danger of jury confusion clearly outweighs the minimal probative value of the test results and, as such, the trial court did not err in finding that the results should be excluded at trial concerning the § 3731(a)(4) charge. *See Modaffare, supra; Jarman, supra.*

▮▮▮▮ Before leaving this topic, however, we must note that cases, where test results alone are insufficient to convict and the Commonwealth does not intend to present expert relation back testimony, should never reach this stage in the proceedings. It is well settled that:

> The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At the hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.... In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense.

*Commonwealth v. McBride,* 528 Pa. 153, 157–58, 595 A.2d 589, 591 (1991) (citations omitted). As such, it would appear that, following a preliminary hearing where the Commonwealth presents a weak inference of guilt and no expert relation back testimony, the defendant should be discharged concerning subsection (a)(4) charges.[5]

Returning our attention to the case at hand, we note the trial court also granted Phillips's motion *in limine* excluding his BAC test results concerning the 75 Pa.C.S.A. § 3731(a)(1) charge. In this respect, the trial court erred. It is well-settled that

> [t]here exists both statutory and case law authority ruling that blood alcohol content results are admissible in section 3731(a)(1) cases. Specifically, it has been determined that, "[I]n a § 3731(a)(1) prosecution, so long as the defendant's alcohol level exceeds .05%, the Commonwealth may introduce evidence regarding that defendant's blood alcohol level." *Commonwealth v. Kemble,* 413 Pa.Super. 521, 526, 605 A.2d 1240, 1242 (1992) (citing *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988)), [alloc. denied, 532 Pa. 651, 615 A.2d 340 (1992) ]; *see* 75 Pa.C.S.A. § 1574(d)(2), (3).

---

5. Despite our above observation, it appears that on August 8, 1995, a preliminary hearing was held on the instant matter and the case was bound over for trial.

*Commonwealth v. Kelley,* 438 Pa.Super. 289, 295, 652 A.2d 378, 381 (1994). *See Gonzalez, supra* at 132–34, 546 A.2d at 34.

 Moreover, "[s]ubsection (a)(1) is a general provision and provides no restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Loeper, supra* at 402–03, 663 A.2d at 673–74. As such, a defendant may be convicted under this subsection "despite the fact that the defendant's blood-alcohol level could not be related back to the time of the defendant's driving." *Commonwealth v. Weiss,* 416 Pa.Super. 623, 640, 611 A.2d 1218, 1227 (1992) (citing *Gonzalez, supra* at 135, 546 A.2d at 35).

 Additionally, we cannot conclude that the probative value of such evidence, in a subsection (a)(1) case, is outweighed by the danger of unfair prejudice or confusion. The danger of confusion which exists in the subsection (a)(4) inquiry, does not exist in the subsection (a)(1) inquiry. Subsection (a)(4) involves a scientific exactitude. Subsection (a)(1) does not. In subsection (a)(1) cases, BAC test results are "but one piece of evidence to be considered in deciding whether the person was under the influence." *Kelley, supra.* Moreover, this Court has held:

> "So long as a blood test is indicative of a defendant's condition at a relevant time, it is admissible and subject to attack or contradiction by other competent evidence." *Commonwealth v. Arizini,* 277 Pa.Super. 27, 41, 419 A.2d 643, 650 (1980). The delay between the operation of the motor vehicle and the drawing of blood [goes] only to the weight of the evidence and not its admissibility. *Commonwealth v. Tylwalk,* 258 Pa.Super. 506, 510, 393 A.2d 473, 475 (1978).

*Commonwealth v. Romesburg,* 353 Pa.Super. 215, 221–22, 509 A.2d 413, 416–17 (1986). *See also Commonwealth v. Kostra,* 349 Pa.Super. 89, 99–101, 502 A.2d 1287, 1292 (1985). Instantly, we have no trouble finding that Phillips's BAC test results were indicative of his condition at the time of his driving and, thus, the lapse of time before Phillips's .146% and .148% test results goes merely to the weight of this evidence at trial. *See Gonzalez, supra* ("There is no question that the result of the chemical test of appellant's blood that showed a .09 percentage three hours after the accident was admissible."); *Tylwalk, supra* (test taken four hours and fifteen minutes after an accident was admissible). Consequently, we find that the Commonwealth should be allowed to introduce evidence of Phillips's BAC test results at trial concerning the subsection (a)(1) charge and we reverse the trial court on this issue.

 The trial court also ruled that the Commonwealth could not present evidence concerning the police officer's observations of Phillips's impairment. Had Phillips been charged solely with § 3731(a)(4), the trial court's ruling would have been correct. *See Loeper, supra. See also Shade, supra.* Once again, however, it is important to note that Phillips was charged with both subsection (a)(4) and subsection (a)(1). As such, the trial court's ruling is erroneous. In *Loeper,* our Supreme Court was very careful to qualify its decision. As seen above, the Court held:

> We ... find no basis upon which to conclude that evidence beyond that provided by scientific testing may in any manner satisfy the inquiry raised by a charge pursuant to subsection (a)(4) **where the Commonwealth is not also advancing a charge pursuant to subsection (a)(1).**

\* \* \* \*

Accordingly, we hold that where ... **an accused is not defending a charge of violating subsection (a)(1)** evidence beyond BAC testing is not only irrelevant, but prejudicial.

*Loeper, supra* at 402, 403, 663 A.2d at 673, 674 (emphasis added). Moreover, the *Loeper* Court noted that "any evidence that is relevant to prove impairment is admissible in a § 3731(a)(1) prosecution." *Loeper, supra* (quoting *Kemble, supra* at 526, 605 A.2d at 1242). Perhaps most importantly, however, is our Supreme Court's decision in *Gonzalez,* where the Court found that evidence of "bloodshot eyes, stuporous conduct, unsteady posture and an odor of alcohol was relevant

and admissible ... with respect to the charge against the appellant that he violated § 3731(a)(1) by driving under the influence of alcohol," even though appellant was also on trial for violating subsection (a)(4). *Gonzalez, supra* at 134–36, 546 A.2d at 35. Thus, there is no question that evidence of impairment is admissible concerning a subsection (a)(1) charge, even when the charge is accompanied by a subsection (a)(4) charge.[6]

 Finally, we must determine whether the two-to-four hour lapse between the accident and the the police officer's observations renders this evidence's probative value less weighty than the danger of unfair prejudice or confusion. We believe that the evidence is admissible. The probative value of the police officer's observations is great. Patrolman Skonieczka found Phillips passed out in the driveway of a house in which he did not live. The lawman also observed that Phillips smelled of alcohol, had bloodshot, glassy eyes and could not maintain his balance. The officer then administered two field sobriety tests which Phillips failed. After being transported to the police station, Phillips was then videotaped as he failed another sobriety test. The police observations and the videotape are direct evidence of Phillips's impairment. In fact, it is hard to imagine stronger evidence of Phillips's inability to operate his car. Moreover, we cannot say that the lapse in time between these observations and the accident is excessive. This is especially true in light of the fact that it appears that Phillips did not move from the front seat of his car in the hours preceding his contact with the police.

Finally, we again note that remoteness generally goes to the weight to be accorded the evidence, rather than its admissibility. *See, e.g., Commonwealth v. Davenport*, 462 Pa. 543, 556, 342 A.2d 67, 73 (1975). Instantly, the Commonwealth should be allowed to establish that Phillips's condition during his contact with the police was indicative of his condition some two-to-three and one half hours earlier. Likewise, the defense will have the oppor-

tunity to convince the jury that the opposite is true. Nevertheless, this issue should properly be left for the jury to decide. Consequently, we must conclude that the trial court abused its discretion in excluding the impairment evidence as it pertains to § 3731(a)(1) charge.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

KELLY, J., and CERCONE, President Judge Emeritus, concur in the result.

---

6. The trial court must, however, be careful to instruct the jury to only consider such evidence as it pertains to the alleged (a)(1) violation and to disregard the evidence as it pertains to the alleged violation of (a)(4).