601 A.2d 1233

COMMONWEALTH of Pennsylvania, Appellee,

v.

James Lee MODAFFARE, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 27, 1991.

Decided Jan. 22, 1992.

Anthony S. Guido, DuBois, for appellant.

John B. Mancke, Mancke and Wagner, Harrisburg, for amicus curiae, Pennsylvania Ass'n of Criminal Defense Lawyers.

Frederic J. Ammerman, Dist. Atty., Michael J. Saglimben, Asst. Dist. Atty., Clearfield, for appellee.

Stuart Suss, Deputy Dist. Atty., West Chester, for amicus curiae, Pennsylvania District Attorneys Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1988, in a trial by jury in the Court of Common Pleas of Clearfield County, the appellant, James Lee Modaffare, was convicted of operating a motor vehicle while under the influence of alcohol. An appeal was taken to the Superior

Court, whereupon the judgment of sentence was affirmed. We granted allowance of appeal.

On the evening of June 8, 1987, appellant and a friend, Brenda K. Guthridge, traveled together by car to two taverns in Curwensville, Pennsylvania. At the taverns, appellant and Guthridge consumed beer. Later, while driving himself and Guthridge home at approximately 2:30 a.m., appellant struck a parked car. Appellant and Guthridge suffered injuries in the collision and were transported to a hospital. At the hospital, a state police trooper requested that appellant consent to a determination of his blood alcohol level. Appellant gave his consent, and, at 4:20 a.m., a blood sample was taken. The sample was forwarded to a crime laboratory for analysis. Appellant's blood alcohol level proved to be 0.108%.

Appellant was charged under two provisions of the drunk driving law. The first provision, 75 Pa.C.S. § 3731(a)(1), makes it an offense to drive "under the influence of alcohol to a degree which renders the person incapable of safe driving." At trial, appellant was acquitted on this charge. Appellant was found guilty, however, of a violation of 75 Pa.C.S. § 3731(a)(4), which provides:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

Appellant filed a motion seeking a new trial. A new trial was granted as to the charge under 75 Pa.C.S. § 3731(a)(4), but, upon re-trial, appellant was again convicted.

The issue presented is whether the evidence was sufficient to sustain the conviction. In reviewing the sufficiency of the evidence we are required to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Hughes*, 521 Pa. 423, 430, 555 A.2d 1264, 1267

(1989). The test is whether the evidence, when so viewed, is sufficient to prove every element of the crime beyond a reasonable doubt. *Id.*

Appellant argues that, because his blood sample was drawn approximately one hour and fifty minutes after the accident, it did not accurately reflect the content of alcohol in his blood at the time he was driving. See generally *Commonwealth v. Gonzalez,* 519 Pa. 116, 125–34, 546 A.2d 26, 30–35 (1988) (an opinion discussing the difficulty of "relating back" blood alcohol test results to the time of driving). In particular, appellant argues that expert testimony adduced by the Commonwealth on the issue of blood alcohol content was sufficiently ambiguous as to leave open to speculation the question of his blood alcohol content while driving. Upon the record presented, we agree that the evidence of appellant's blood alcohol level was insufficient to prove beyond reasonable doubt that his blood alcohol level was equal to or greater than 0.10% while driving.

In 75 Pa.C.S. § 3731(a)(4), supra, it is made an offense to drive a vehicle *while* one's blood alcohol content is 0.10% or greater. In contrast, we note that the legislatures of certain other states have enacted statutes making it an offense to drive with a blood alcohol content of 0.10% "as shown by" or "as determined by" a blood alcohol test administered within a specified time *after* driving has ceased. See generally *People v. Mertz,* 68 N.Y.2d 136, 506 N.Y.S.2d 290, 497 N.E.2d 657 (1986) (compilation of various states' statutes on drunk driving). Under such statutes, the facts of the present case might readily support a conviction.* Our statute, however, is more limited in its focus. It makes one's blood alcohol content *while* driving the pivotal issue.

---

* Arguably, statutes such as these may be more responsive to societal concerns about drunk driving, making it easier to obtain convictions. Such arguments could properly be addressed to our legislature, rather than to this Court, for we are constrained to apply the plain language of the existing statute.

The legislature has provided that blood tests conducted after suspected drunk drivers have been stopped will be used as evidence of the suspects' blood alcohol contents while driving. See generally 75 Pa.C.S. § 1547 (chemical testing to determine amount of alcohol). In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been driving, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was significant, the inference of guilt is weakened.

The blood test in this case was not performed until approximately one hour and fifty minutes after appellant's accident. It revealed a blood alcohol content that was barely above the 0.10% level, i.e., 0.108%. The Commonwealth introduced testimony from the physician who drew the blood sample for analysis. He testified that a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after drinking has ceased, and that, thereafter, the level declines. He stated also that alcohol has no effect until it is absorbed into the bloodstream, which normally takes thirty to ninety minutes. He gave his opinion that, at 4:20 a.m. when the blood sample was drawn, the alcohol concentration in appellant's blood was probably declining. On cross-examination, however, the physician testified that the alcohol concentration may have peaked between the time of the accident and the time when the blood sample was drawn. He was not able to offer any opinion as to what the alcohol level was at the time of the accident. In short, there was no evidence upon which the physician could offer an opinion as to whether appellant's blood alcohol level was greater than or equal to 0.10% at the time of the accident. The physician further testified that if appellant's drinking had occurred just five or ten minutes before the accident, then there

would have been no alcohol in his bloodstream when the accident occurred.

The unlikelihood that appellant's drinking occurred just five or ten minutes before the accident is apparent, however, considering that appellant consumed beer at two different taverns on the night of the accident. Also, the accident occurred at a location a number of miles away from the taverns, making it unlikely that appellant could have arrived there in such a short time.

Appellant did not testify at trial. Guthridge testified, however, that at each of the two taverns that she and appellant visited on the night of the accident appellant consumed at least one beer. Guthridge was seriously injured in the accident and testified that she did not recall whether appellant had more than one beer at each tavern. Nor did she recall at what times she and appellant arrived at or departed from the taverns, or even roughly how long they were there. Aside from Guthridge's testimony, there is nothing in the record that sheds light upon the quantity or timing of appellant's consumption of alcohol on the night of the accident.

Appellant argues, based upon testimony of the physician who testified for the Commonwealth, that his blood alcohol level may have peaked sometime after the accident but before the blood test was performed. In addition, he argues that there is no evidence that his blood alcohol level was equal to or above 0.10% at the time of the accident.

We agree that the record left the jury free to engage in speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time. It is well recognized, however, that a criminal conviction cannot be based upon mere speculation or conjecture. *Commonwealth v. Holzer*, 480 Pa. 93, 98, 389 A.2d 101, 104 (1978).

Given the lapse of one hour and fifty minutes between appellant's accident and the taking of a blood sample, the very small amount by which the test result exceeded the 0.10% level, and the testimony provided by the physician

that, depending on when appellant finished drinking, his blood alcohol level may have been below 0.10% at the time of the accident, we do not believe that it was proven beyond a reasonable doubt that appellant's blood alcohol exceeded permissible limits while driving. Appellant's conviction cannot, therefore, be sustained.

Judgment of sentence reversed.

CAPPY, J., files a dissenting opinion which is joined by McDERMOTT, J.

CAPPY, Justice, dissenting.

I dissent, based on the reasoning of my dissenting opinion in *Commonwealth v. Jarman,* —— Pa. ——, 601 A.2d 1225.

McDERMOTT, J., joins in this dissenting opinion.