644 A.2d 193

**COMMONWEALTH of Pennsylvania**

v.

**Milton STITH, Appellant.**

Superior Court of Pennsylvania.

Submitted April 6, 1994.

Filed June 24, 1994.

Jeffrey M. Azpell, Media, for appellant.

Vram Nedurian, Jr., Asst. Dist. Atty., Newton Square, for Com., appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

CIRILLO, Judge.

Milton Stith (Stith) appeals from a judgment of sentence entered in the Court of Common Pleas of Delaware County. We affirm.

On October 16, 1992 at approximately 3:05 a.m., a Swarthmore Borough police officer observed Stith operating his car in an erratic manner. Stith was stopped by Officer Raymond Stufflet, was given field sobriety tests,[1] and was asked to submit to a blood alcohol test, to which he agreed. Stith's blood was taken at Springfield Hospital approximately 35 to 40 minutes after the stop. His blood alcohol content (BAC) registered 0.12%. The margin of error in the testing procedure, as testified to by the forensic scientist who performed the test, indicated that the BAC could have ranged from .1123 to .1319. Stith was subsequently charged with violating 75 Pa.C.S.A. §§ 3731(a)(1), driving while under the influence of alcohol and incapable of safe driving, and 3731(a)(4), driving while under the influence of alcohol with a blood alcohol content of 0.10% or greater.

An omnibus pre-trial motion to compel discovery was filed, in which Stith requested that the Commonwealth provide him with "the results or reports of scientific tests, expert opinions and written or recorded reports of any experts consulted by the Commonwealth, whether or not the Commonwealth intends to call such expert as a witness at the trial in this matter." The trial court ordered the Commonwealth to provide Stith with a copy of this report, which included the Commonwealth's expert forensic toxicological evaluation.

Just prior to jury selection on July 13, 1993, Stith learned, allegedly for the first time, that the Commonwealth's expert would "relate-back" Stith's BAC to the time he was driving. Stith made a motion to preclude the Commonwealth from introducing the relation-back testimony, as it had not been

1. Officer Stufflet testified that Stith failed both the "heel-to-toe" test and the "one-legged stand" test. Officer Stufflet also testified that he smelled an odor of alcohol when he approached Stith, and that Stith walked with a stagger after exiting his car to perform the sobriety tests.

made a part of the requested discovery report. The motion was denied.

At trial, the Commonwealth offered the testimony of Dr. Richard Cohn, a toxicologist with a Ph.D. degree in pharmacology. Dr. Cohn testified that he could render a judgment regarding a person's BAC at the time of driving without knowing when drinking was commenced or when the last drink was consumed. Specifically, during direct examination, the relevant testimony was as follows:

Q. In general, Dr. Cohn, what happens to a person's [BAC] after they stop drinking?

A. After the drinking stops, ... the alcohol is metabolized or dissipated from the body. I think what you're referring to is the dissipation rate. Alcohol leaves the body at a known, constant rate. And that rate at which it leaves is 0.015% per hour. So every hour the body has the capability of ridding itself of approximately ... one drink....

Q. What factors would you need to know in order to determine what someone's blood alcohol content is ... or at a point where they are stopped driving a vehicle?

A. [T]he most important thing is to have a blood alcohol concentration determined. Also, together with that, it would be helpful to know what the drinking pattern was, when the drinking commenced, ... and when the last drink was consumed. *But in the absence of having that specific information, judgments can still be made—forensic toxicologic judgments can still be offered on the analytical findings of a .12% blood alcohol obtained 40 minutes after an incident.*

Q. If in the present case, Dr. Cohn, I told you that 40 minutes after the Defendant was stopped driving a vehicle, his [BAC] tested at a .12%, are you able to form an opinion with any degree of medical certainty as to what his [BAC] was at the time of driving?

MR. AZPELL: Objection.

THE COURT: The answer to that is yes, or no, Doctor.

THE WITNESS: Yes, Your Honor.

**Q.** And what is that opinion?

**A.** My opinion is that at the time that he was driving, ... that the concentration was higher than the .12[%], that the actual circulating, pharmacologically active [BAC] was .14%. And I based that on the fact that 40 minutes after the incident, it's a fact that we know that the blood alcohol was at and around .12%. In order to have that, that equates to approximately—as a rule of thumb, approximately to about 6 drinks.... It's unlikely that somebody is going to take all of that at one time, chug-a-lug it down, so to speak, at one sitting, and then absorb that within that 40-minute period....

[objection overruled]

**Q.** Doctor, have you finished the basis for your opinion?

**A.** Well, I guess the point I was making was that it's a fact that the circulating blood alcohol was a .12%. *In my expert forensic toxicologic opinion, there's no way that that .12% could exist 40 minutes after the incident, with the scenario where this individual was not under the influence of alcohol at the time he was stopped.*

Additionally, Dr. Cohn was asked, hypothetically, if someone *had* consumed six drinks just before being stopped (which assumes a position most favorable to Stith), would that person exhibit the signs described by Officer Stufflet, *i.e.*, walking with an unsteady gait, failing field sobriety tests, etc.? Dr. Cohn replied in the negative. He testified, on cross-examination, that alcohol is absorbed into the bloodstream within approximately 40 minutes after consumption. Also on cross-examination, Dr. Cohn testified that Stith had a BAC higher than .12% at the time he was stopped. In other words, it was Dr. Cohn's opinion that Stith's BAC was *decreasing* between the time he was stopped and the time the blood was drawn. No testimony was offered as to when Stith had his last drink.

The jury returned a verdict of not guilty of violating section 3731(a)(1), and guilty of violating section 3731(a)(4) (driving

with a BAC of .10% or greater).[2]  Post-verdict motions were filed and denied and Stith was sentenced to 30 days (15 weekends) to 23 months imprisonment.  This appeal followed.

Stith raises the following issues for our review:

(1) Did the trial court err in allowing the Commonwealth's expert to relate back appellant's BAC to the time he was driving where the evidence did not reveal when appellant had his last drink or whether his BAC was rising or declining at the time he was driving?

(2) Did the trial court err in allowing the Commonwealth's expert to relate back appellant's BAC to the time that he was driving where such testimony exceeded the scope of the expert's report?

(3) Was the evidence sufficient to sustain a conviction for a violation of 75 Pa.C.S.A. § 3731(a)(4)—driving while under the influence of alcohol with a BAC of .10% or greater?

Stith first contends that the trial court impermissibly allowed Dr. Cohn's relation-back testimony where there was no evidence introduced as to when Stith had his last drink.  The decision to admit expert testimony lies within the sound discretion of the trial court and such determination will not be reversed unless an abuse of that discretion is found to exist. *Commonwealth v. Miller*, 426 Pa.Super. 410, 423–26, 627 A.2d 741, 748–49 (1993); *Commonwealth v. Emge*, 381 Pa.Super. 139, 553 A.2d 74 (1988).

In *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992) and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), the Pennsylvania Supreme Court vacated the appellants' judgments of sentence on the basis that *75 Pa. C.S.A. § 3731(a)(4) requires the relation back of a BAC test*

---

**2.**   **(a) Offense defined**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

  \*    \*    \*    \*    \*    \*

  (4) the amount of alcohol by weight in the blood of the person is **0.10** or greater.

  75 Pa.C.S.A. § 3731(a)(4) (emphasis added).

*result to the time when the accused was driving.*[3] The BAC's of the defendants in *Jarman* and *Modaffare* were both tested minimally above .10%—.104% and .108%, respectively. One hour had elapsed between the time Mr. Jarman was stopped and the time when a sample of his blood was drawn at the hospital. Approximately two hours had passed between the time of Mr. Modaffare's accident and the time his blood was drawn for purposes of determining his BAC. In neither case were the Commonwealth's experts able to render an opinion as to whether the defendants' BAC was .10% or greater at the time of the stop/accident. Accordingly, both cases were reversed on insufficient evidence grounds. *See also Commonwealth v. Osborne*, 414 Pa.Super. 124, 606 A.2d 529 (1992) (where defendant's BAC was .1488% and the sample was taken within an hour of driving, it was determined that these circumstances did not create a strong inference of guilt and, therefore, the court held that relation-back testimony was required to sustain a conviction under section 3134(a)(4)).

Here, Stith's BAC was .12% and the blood sample was taken about 40 minutes after being stopped. Consistent with *Jarman, Modaffare,* and *Osborne*, these circumstances did not give rise to a strong inference of guilt. Relation-back testimony was required in order to sustain a conviction under section 3731(a)(4).

The question then becomes whether Dr. Cohn's testimony was adequate to serve as relation-back testimony, or whether the testimony was irrelevant and not properly admitted. Stith submits that Dr. Cohn formed an opinion as to Stith's BAC at the time he was driving by *assuming* that Stith's BAC was declining at the time he was driving; he asserts that without evidence to establish Stith's drinking

3. In both cases it was stated that where test results show BAC levels significantly above .10% and where such samples are obtained soon after the suspects have been stopped, there is a strong inference that BAC levels were in the prohibited range while driving. Conversely, where BAC test results only minimally exceed .10% and where the suspects' blood samples are drawn shortly after they are stopped, the inference is considerably weakened.

pattern, the relation-back testimony was based on speculation and conjecture.

In support of this argument, Stith relies upon *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). There, the appellant had been involved in an accident and his BAC, taken three hours after the accident, was .09%. There was no evidence revealing when appellant had his last drink or whether his BAC was rising or declining at the time of the accident. Rather, the Commonwealth's expert witness stated that *if it was assumed* appellant's BAC peaked prior to the accident, then it was *possible* that his BAC was .125 at the time of the accident. He also stated that he was *unable* to give an opinion as to appellant's related-back BAC without knowing when the appellant had taken his last drink. In considering the admissibility of the expert relation-back testimony, the Pennsylvania Supreme Court noted:

> *Since the evidence did not reveal when appellant had his last drink or whether his blood alcohol had peaked prior to the accident, it is clear there is no way of judging whether his [BAC] was rising or declining at the time of the accident.* The question then arises whether the testimony concerning the absorption and elimination of alcohol was relevant.

> [The expert's] testimony that he could not state what appellant's [BAC] was at the time of the accident because he did not know when appellant took his last drink actually tended to show that the Commonwealth could not prove that the appellant was driving with a [BAC] of .10 or more in violation of § 3731(a)(4).

*Id.* at 133–134, 546 A.2d at 34 (emphasis added; citations omitted).

Based on the expert's testimony, the court in *Gonzalez* found it unclear as to whether the trial court properly received and admitted the expert testimony as evidence that appellant was driving while his BAC was .10% or more. In the instant case, like in *Gonzalez*, there was no testimony presented as to

when Stith had his last drink. This, however, is where the similarity ends.

Here, Dr. Cohn *unequivocally stated* that he could render a judgment regarding Stith's BAC without knowing when the last drink was consumed, that at the time Stith was driving his BAC was an estimated .14%, and that Stith's BAC was decreasing between the time he was stopped and the time blood was drawn. As a basis for these conclusions, Dr. Cohn testified that alcohol is absorbed into the bloodstream, after ingestion, approximately within a 40 minute period. He also opined that a reading of .12% BAC equates to approximately six drinks. Considering a scenario most favorable to Stith, Dr. Cohn opined that, assuming six drinks were consumed just before being stopped,[4] it was not possible for one to exhibit signs of intoxication at the scene. Rather, the signs of intoxication at the scene of the arrest, combined with a test result of .12% BAC 40 minutes after driving, gave rise to Dr. Cohn's conclusion that Stith's BAC was *declining* between the time he was stopped and the time blood was drawn. From these facts Dr. Cohn was able to estimate that Stith's BAC *at the time of driving* was approximately .14%. *See Commonwealth v. Britcher*, 386 Pa.Super. 515, 563 A.2d 502, *aff'd*, 527 Pa. 411, 592 A.2d 686 (1991) (while an expert may not base an opinion on conjecture, an expert opinion may be given in response to a hypothetical question posed by counsel so long as the assumed set of facts upon which the opinion is based is eventually supported by competent evidence and reasonable inferences derivable therefrom); *see also Commonwealth v. Loeper*, 423 Pa.Super. 32, 620 A.2d 25 (1993) (where an expert testified that most people do not exhibit signs of intoxication until they achieve a level of .15%, the fact finder could infer from evidence of appellant's slurred speech that appellant's BAC was in excess of .10% at the time of the stop and that

4. This scenario, of course, would bolster Stith's position. Arguably, if *all* drinking was done immediately before being stopped, a person's BAC at the time of the stop would be on the rise. Assuming a BAC test was performed a significant time after the stop, the results would reflect a BAC at its peak, which, if related back, would not necessarily reflect an illegal BAC *at the time of driving.*

appellant's BAC did not rise between the time he was stopped and when the blood was tested).

Despite the fact that there was no testimony indicating when Stith had his last drink, we find that the expert testimony was helpful; it was not confusing, prejudicial, nor based on conjecture. We find no reason to disturb the trial court's decision to admit Dr. Cohn's expert testimony, as there was no abuse of discretion. *Miller, supra; Emge, supra.*

■ The second challenge to the admissibility of Dr. Cohn's expert testimony is based on Stith's argument that such testimony exceeded the scope of the expert report. Stith submits that because the report did not include a reference to Stith's related-back BAC, that Stith's motion to preclude the relation-back testimony should have been granted pursuant to Pennsylvania Rule of Criminal Procedure 305E.[5] We disagree. As mentioned above, the Commonwealth, by order of the trial court, provided Stith with a copy of the Commonwealth's expert forensic toxicological evaluation, which provided in part that, "Based on the BAC concentration found 40

---

5. The pertinent provisions of Pa.R.Crim.P. 305 provide:

**B. Disclosure by the Commonwealth**

(1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

     *    *    *    *    *    *

(e) results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant, which are within the possession or control of the attorney for the Commonwealth.

     *    *    *    *    *    *

**E. Remedy**

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order it deems just under the circumstances.

Pa.R.Crim.P. 305B(1)(e) and 305E.

minutes after being stopped ... [Stith was] unfit to safely judge his surroundings and control his actions *while driving*."

Not included in the report was Dr. Cohn's opinion, which he testified to at trial, that at the time of driving the BAC was higher than the registered .12% and was, more accurately, .14%. Stith, in his appellate brief, concedes that there are no reported criminal cases which discuss the appropriate remedy where the Commonwealth introduces expert testimony exceeding the scope of an expert report. Rather, Stith relies upon civil rules and case law to support his notion that in criminal cases, an expert is limited to testifying only to the facts contained in his or her report. *See* Pa.R.C.P. 4003.5(c).[6]

Our review of the expert's report reveals that, while it did not cite a specific related-back BAC percentage, the report contained language sufficient to notify Stith of Dr. Cohn's intent to testify regarding Stith's related-back BAC. Implied in the portion of the report which referred to Stith's impaired judgment "while driving," is the assumption that Dr. Cohn planned to offer an opinion regarding a related-back BAC. Dr. Cohn's testimony did not exceed the fair scope of his report.

It is axiomatic that defense counsel has an obligation to remain cognizant of the current law, especially law which directly impacts a client's case. *Jarman* and *Modaffare* are cases crucial to both the Commonwealth and defense in any DUI matter. The mandates regarding relation-back testimony have been established in these cases and, accordingly, counsel for both sides should be adequately prepared to examine and cross-examine witnesses offering such testimony. We are not persuaded that Stith did not anticipate the intro-

6. Rule 4003.5(c) provides, in pertinent part:
> (c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings ... his direct testimony at trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his ... separate report.... However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

Pa.R.C.P. 4003.59(c).

duction of relation-back testimony; the record does not support this claim. For instance, in his opening statement, Stith declared, "And, again, they [Commonwealth] have to prove what it [the BAC] was *at the time that he was operating the vehicle* [,] [n]ot what it was at the time the blood was drawn, or when the blood was tested." Also, when Stith's motion to restrict the expert testimony was denied, he did not request a mistrial, nor did he request that defense counsel be given time to consult his own expert. Finally, after Dr. Cohn's testimony, he was cross-examined extensively by Stith. Again, we find no basis on which to disturb the trial court's decision to allow the Commonwealth to relate back Stith's BAC. *Miller, supra; Emge, supra.*

In his final issue on appeal, Stith challenges the sufficiency of the evidence to sustain a conviction for a violation of 75 Pa.C.S.A. § 3731(a)(4). A sufficiency of the evidence claim requires the reviewing court to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner; the test is whether the evidence, when so viewed, is sufficient to prove every element of the crime beyond a reasonable doubt. *Jarman, supra; Modaffare, supra.*

Here, the Commonwealth was required to prove that Stith's BAC was .10% or greater while he was operating his vehicle. 75 Pa.C.S.A. § 3731(a)(4). In compliance with the mandates set forth in *Jarman* and *Modaffare,* the Commonwealth presented expert testimony relating back Stith's BAC test result to the time Stith was driving. Specifically, the expert testimony, which we have deemed properly admitted, revealed that Stith's BAC at the time of driving was an estimated .14%. As previously discussed, this determination stemmed from the evidence of Stith's visible signs of intoxication when he was stopped, and his .12% BAC result 40 minutes later. This evidence supported Dr. Cohn's conclusions that Stith's BAC was in excess of the legal limit while driving, and that the BAC was declining at the time the blood was tested. The evidence and reasonable inferences to be drawn therefrom, when considered in the light most favorable to the Common-

wealth, were sufficient to enable the jury to find beyond a reasonable doubt that Stith was guilty of violating Pa.C.S.A. § 3731(a)(4).

Accordingly, we affirm the judgment of sentence.