# Commonwealth v. Senzick

*Kelly Jo Slone, assistant district attorney,* for Commonwealth.

*David H. Knight,* for appellant.

GOLDBERG, *J.,* May 5, 2005—Defendant, Albert Senzick, urges us to declare unconstitutional certain provisions of the recently enacted driving under the influence statute.[1] For the reasons set forth below, we find Senzick's challenge to the constitutionality of the new DUI statute to be without merit. Accordingly, we uphold the statute and deny Senzick's motion.

The stipulated facts of this case are as follows. On July 17, 2004, at 7 p.m., Senzick collided into a concrete barrier while driving his vehicle on Route 13 in Falls Township, Bucks County. He reported the collision at 7:02 p.m. and, by 7:04 p.m., Officer Bryan White arrived at the scene of the accident. Senzick appeared intoxicated and failed a field sobriety test. He was then transported to Frankford Hospital for a blood test to determine his blood alcohol content. The test was completed at 8:20 p.m., and the results showed that at the time of testing, Senzick had a BAC of .18 percent. Senzick was then charged with driving under the influence of alcohol under 75 Pa.C.S. §3802(a)(1) and §3802(c).[2]

---

1. The Commonwealth's DUI statute appears at 75 Pa.C.S. §3802. Senzick's challenge is limited to the constitutionality of 75 Pa.C.S. §3802(c), which relates to driving after imbibing a sufficient amount of alcohol such that one's blood or breath alcohol concentration is 0.16 percent or higher within two hours after driving.

2. Section 3802(a)(1) prohibits driving while impaired generally and section 3802(c) prohibits driving after drinking a sufficient amount

On January 24, 2005, Senzick filed a motion to declare section 3802(c) unconstitutional, and a hearing was held on this issue on February 3, 2005. In support of his motion, Senzick argued that section 3802(c) was impermissibly vague and overly broad in that it does not require proof of BAC at the actual time of driving. Senzick also made an offer of proof that his toxicology and pharmacology expert, Dr. Gary Lage, would testify that his BAC at the time of driving was below .16 percent. The Commonwealth objected to such testimony, arguing that under section 3802(c), the proper inquiry was an individual's BAC at the time of testing and that BAC at the time of driving was irrelevant. We took the Commonwealth's objection under advisement and permitted the testimony. Dr. Lage testified that, based on information provided to him by Senzick, in his opinion, Senzick's BAC at the time of driving would have been approximately .14 percent to .15 percent.

After careful consideration and for the reasons set forth below, we now uphold the constitutionality of section 3802(c).

The relevant portions of the statute at issue are as follows:

"Section 3802. Driving under influence of alcohol or controlled substance

---

of alcohol to raise one's BAC to 0.16 percent or higher within two hours after driving. As section 3802(c) relates to driving under the influence of the highest rate of alcohol recognized by the statute, the penalties for violating this subsection are more severe than the penalties for violating section 3802(a)(1).

"(a) *General impairment.*—

"(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

"(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08 percent but less than 0.10 percent within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

"(b) *High rate of alcohol.*—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10 percent but less than 0.16 percent within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

"(c) *Highest rate of alcohol.*—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16 percent or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle."

Senzick only challenges the constitutionality of section 3802(c).

Initially, we note that when analyzing the constitutionality of a statute, there is a strong presumption that the statute does not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996). While penal statutes are to be strictly construed, we are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution. *Id.* at 304, 681 A.2d at 165.

The vagueness and overbreadth challenges at issue herein have been defined in the following terms:

" 'As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' . . . Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge their future conduct. . . .

"A statute is 'overbroad' if, by its reach, it punishes constitutionally protected activity as well as illegal activity. . . . The language of the statute in question literally encompasses a variety of protected lawful conduct." *Barud,* 545 Pa. at 304-305, 681 A.2d at 165. (citations omitted)

With these presumptions and principals in mind, we turn to Senzick's arguments. However, to place Senzick's

arguments in the proper context, we first review the Commonwealth's prior DUI law.

Prior to 1996, the now-repealed 75 Pa.C.S. §3731 (a)(1) made it an offense to drive under the influence of alcohol to a degree that rendered the person incapable of safe driving, and 75 Pa.C.S. §3731(a)(4) made it an offense to drive while the amount of alcohol by weight in the blood of the person was .10 percent or greater. Under section 3731(a)(4) the relevant inquiry was the person's BAC at the time of driving. However, logistically, blood tests could never be taken at the time of driving. Instead, they were taken at some subsequent time after the driver had ceased driving and was taken into custody by the arresting officer.

Relatively consistent scientific evidence established that, after a person stops drinking, his BAC continues to rise to a peak level that occurs sometime between 30 minutes to 90 minutes after his last drink.[3] Thus, it was possible for a person to be driving at a time when his BAC was below .10 percent and tested some time later when his BAC had risen to a level at or above .10 percent. While that person may not have performed any act that had been declared to be criminal (*i.e.,* driving with a BAC at .10 percent or above), he could have been convicted of violating section 3731(a)(4) if his BAC rose above .10 percent at the time he was tested.

In *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare,* 529 Pa.

---

3. Such evidence was offered and accepted in cases such as *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992); *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992); and *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988).

101, 601 A.2d 1233 (1992), our Supreme Court was presented with facts where this problem was highlighted. In both cases, the defendants were arrested for driving while under the influence of alcohol and were subsequently taken to area hospitals for blood tests. Jarman's blood test, which was taken approximately one hour after he was stopped, revealed a BAC of .114 percent. *Jarman,* 529 Pa. at 94, 601 A.2d at 1230. Modaffare revealed a BAC of .108 percent approximately one hour and 50 minutes after he was stopped. *Modaffare,* 529 Pa. at 103, 601 A.2d at 1234. At trial, the Commonwealth's expert witnesses testified that the defendants' BAC may not have peaked until after the defendants had operated their motor vehicles.

In both cases, the court found that there was insufficient evidence to sustain convictions under 75 Pa.C.S. §3731(a)(4). The court concluded that because: (1) there was a significant delay between the time the defendants were stopped and the time that their BAC was tested and (2) the blood tests revealed that the defendants' BAC only minimally exceeded .10 percent at the time of testing, the evidence was insufficient to prove that the defendants' BAC was .10 percent or higher at the time of driving. After these decisions, in order to gain DUI convictions based on a BAC of .10 percent or above, the Commonwealth was required to present scientific evidence that related a driver's BAC at the time of testing back in time to what his BAC would have been at the time of driving.

In apparent response to *Jarman* and *Modaffare,* and in effort to avoid the relation back requirements established therein and the ensuing battle of experts, the leg-

islature amended the DUI law to add a new subsection, section 3731(a)(5), which made it an offense to have a BAC of .10 percent or greater within three hours after driving.[4] This new subsection was enacted in addition to section 3731(a)(4), which prohibited having a BAC of .10 percent or higher at the time of driving. Thus, after the effective date of the amendment, the Commonwealth potentially had two scenarios upon which a person could be prosecuted based on BAC levels: either where a person had a BAC of .10 percent or above at the time of driving or where a person had a BAC of .10 percent or above within three hours after driving.

In *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996), the constitutionality of section 3731(a)(5) was challenged. As in the instant action, the defense contended that section 3731(a)(5) was overly broad and void for vagueness. In interpreting section 3731, the Supreme Court implicitly defined the conduct criminalized therein as having a BAC of .10 percent or above *at the time of driving.* It then held that section 3731(a)(5) was overbroad in that it could sweep legal conduct (*i.e.,* driving with a BAC of .099 percent or below) into its ambit, since a conviction under that subsection depended upon

---

4. The relevant portion of section 3731(a)(5) provided as follows:
*"Section 3731 Driving under influence of alcohol or controlled substance*

"(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle: . . .

"(5) if the amount of alcohol by weight in the blood of the person is 0.10 percent or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

"(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. . . ."

BAC up to three hours after driving and did not require any proof of BAC at the time of driving.

The *Barud* court also held that section 3731(a)(5) was impermissibly vague, as it created confusion as to when a driver would need to be concerned about his BAC. The court noted that, prior to the amendment, there was a bright line rule that a person could not drive while operating a vehicle at a time when his BAC was .10 percent or greater. However, after the amendment, a person was required to predict his BAC at two different times—first at the time of driving and second within three hours after driving. The Supreme Court determined that these co-existing and alternative theories failed to provide a reasonable standard by which an ordinary person could contemplate his future conduct. As section 3731(a)(5) was both vague and overbroad, it was stricken as unconstitutional.

On September 30, 2003, the legislature revised the DUI law by rescinding section 3731 and passing 75 Pa.C.S. §3802.[5] The fundamental difference between the former DUI statute and the current DUI statute as it pertains to the issue before this court is that under the former law, BAC at the time of driving was an essential element of the offense, while under the current law it is not. Indeed, section 3802(a)(2) makes it an offense to drive after drinking a sufficient amount of alcohol to raise an individual's BAC to at least 0.08 percent within two hours after driving. Sections 3802(b) and 3802(c) effectively criminalize the same conduct but increase the penalties for driving under the influence of successively higher BAC levels.

---

5. Section 3802 became effective February 1, 2004.

Thus, DUI convictions under sections 3802(a)(2)—3802(c) now require proof of BAC at the time of testing, which must occur within two hours of driving. Under these subsections, there is no need to prove BAC at the actual time of driving.

While our appellate courts have not yet analyzed the validity of section 3802, several trial courts have considered the issue and have upheld the constitutionality of the statute.[6] In *Commonwealth v. Nesbitt,* Philadelphia M.C. no. 0402-1892 1/1, the Honorable William A. Meehan Jr. explained the basis for the change in the DUI law as follows:

"The shift in the legislature's thinking in drafting section 3802(a)(2) is clear. The legislature recognized that intoxication is not a momentary state, but rather, a condition caused by the consumption of alcohol that can last over an extended period of time. That time period is the period during which the legislature is interested in deterring people from driving their vehicles. Because the legislature is not capable of determining the exact point each individual becomes impaired to the point of being unfit to drive, it created minimum guidelines that place the public on notice of the prohibited conduct and places the onus on the individual to monitor his or her drinking so that their blood alcohol concentration does not rise to 0.08 percent during that period."

---

6. See for example, *Commonwealth v. Brantner,* Cumberland County CCP, no. CP-21-CR-2074-2004 (January 3, 2005); *Commonwealth v. Kozo,* Northampton County CCP, no. 1553-2004 (December 22, 2004); *Commonwealth v. Ciccolo,* Centre County L. J. VI, no. 50, p. 5 (October 2004); and *Commonwealth v. Nesbitt,* Philadelphia M.C. no. 0402-1892 1/1.

· Although stated in relation to subsection (a)(2), we find that Judge Meehan's comments are equally applicable to subsection (c). In light of these considerations, we conclude that section 3802(c) is rationally related to the Commonwealth's legitimate interest in keeping its highways safe.

Against this historical background, we consider Senzick's constitutional arguments, which essentially adopt those raised in *Barud, supra.* At the outset, however, we note the common flaw that exists in each of Senzick's arguments, which is that he presumes that BAC at the time of driving is still a relevant inquiry, as it was when *Barud* was decided. As section 3802(c) only prohibits having a BAC of .16 percent or above *at the time of testing* within two hours after driving, the reasoning and analysis set forth in *Barud* and adopted by Senzick is no longer applicable.

Senzick's first contention is that section 3802(c) is overbroad in that it is based on BAC at the time of testing, which will allow convictions for conduct that has not been declared to be criminal. By way of example, he states that:

"If a person operates a motor vehicle with a BAC below the legal limit and is stopped, the evidence could not sustain a conviction under section 3731 or section 3802. However, if that person's level then rose above the legal limit (within three hours under section 3731 or two hours under section 3802) then he could be prosecuted and in fact would be convicted because he would not even be able to offer a defense." (Senzick's brief, p. 4.)

This argument is without merit because under section 3802(c) the prohibited activity is having a certain BAC

at the time of testing, not at the time of driving. If the person in Senzick's example was tested in a timely fashion and his BAC was above .16 percent at that time, he would have committed the act prohibited by the statute, and a conviction would be appropriate. As that is the only conduct that is criminalized under section 3802(c), the statute will only permit convictions for activity that has been criminalized. Thus, the statute is not overbroad, and the constitutional concerns raised in *Barud* are inapplicable.

Senzick next contends that section 3802(c) should be declared unconstitutional under the void for vagueness doctrine. As previously stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983).

Senzick argues that section 3802(c) is impermissibly vague, as: "it is impossible for a motorist to know what if any section of section 3802 they violated because they do not know when the blood testing will be done. A motorist in Senzick's situation could be innocent of DUI, guilty of DUI-general impairment section 3802(a)(2), guilty of DUI high rate of alcohol section 3802(b), or guilty DUI highest rate of alcohol section 3802(c) all depending on when the officer conducted the blood test." (Senzick's brief, p. 4.)

Thus, he concludes that the statute is not set forth with sufficient definiteness to allow ordinary people to understand what conduct is prohibited and that it also fails to discourage arbitrary and discriminatory enforcement.

The error in Senzick's vagueness example is that it is quite clear what conduct the legislature has criminalized. By the plain terms of section 3802(c), an individual is guilty of DUI if a test of his blood or breath taken within two hours after driving reveals a BAC of .16 percent or higher. Under section 3802(c), no other conduct is criminalized. As the statute limits the officer's discretion in the timing of the blood or breath test to the period when BAC is likely to peak, the two-hour time limitation is not arbitrary, but rationally related to the Commonwealth's interests. From a practical perspective, a shorter time limit which would further reduce an officer's discretion may not be possible, given the time that may be required to transport a suspect to a hospital for the BAC test. Thus, we find the statute is sufficiently specific to guide future conduct and that its terms do not encourage arbitrary or discriminatory enforcement. For these reasons, we reject Senzick's vagueness argument.

Lastly, we note that Senzick does not contend that he would not be guilty of DUI under a more narrowly drafted DUI statute or that he was confused as to what conduct was prohibited. To the contrary, his expert testified that at the time he was driving, Senzick had a minimum BAC of .14 percent. Thus, Senzick's alleged dilemma is not, as in *Barud,* that he could be prosecuted under two sets of circumstances. Rather, even if we were to permit and accept his expert's testimony, he would still be subject to prosecution under section 3802(b). The true thrust of Senzick's contention regarding the timing of his BAC is that he should be entitled to a less severe penalty, a sentencing issue. As our legislature has deemed otherwise, we will defer to them and dismiss this assertion.

For all of the above reasons, we find that the challenged portion of the DUI statute, specifically 75 Pa.C.S. §3802(c), is constitutional. Our order follows:

ORDER

And now, May 5, 2005, upon consideration of defendant Albert Senzick's motion to declare certain provisions of the driving under the influence of alcohol (DUI) statute to be unconstitutional, the Commonwealth's response thereto, and after a hearing thereon, it is hereby ordered that said motion is denied. It is further ordered that the Commonwealth's objection to the testimony of defendant's toxicology and pharmacology expert, Dr. Gary Lage, is sustained, and such testimony is stricken.