[J-90-2019] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 19 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered September 24, 2018 at |
| | : | No. 1439 WDA 2017, reversing the |
| v. | : | Order of the Court of Common Pleas |
| | : | of Westmoreland County entered |
| | : | September 28, 2017 at No. CP-65- |
| MICHELLE LEIGH STARRY, | : | CR-0001154-2014, and remanding. |
| | : | |
| Appellant | : | SUBMITTED: September 4, 2019 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: JANUARY 22, 2020**

I have no categorical objection to the concept of "relation-back" evidence in the context of driving-under-the-influence crimes, but the learned Majority's analysis in this matter is wholly unnecessary given the unmistakably clear language of the DUI statute's "good cause" exception.[1] And while unnecessary analyses are one thing, the Majority here does something far more problematic. By holding that the parties' arguments with regard to the statutory good-cause exception are "effectively mooted" by today's holding, Maj. Op. at 12, the Majority effectively writes Subsection (g) out of the statute, and thereby relieves the Commonwealth of its undisputed[2] obligation to show good cause for tardiness

---

[1]    75 Pa.C.S. § 3802(g).

[2]    The Majority objects to my characterization of the Commonwealth's burden as "undisputed," because the Commonwealth now argues that it should not be required to satisfy the good-cause exception. Maj. Op. at 12-13. Because I am referring to unambiguous statutory language, perhaps the better word is "indisputable." The good-cause exception indisputably places an obligation upon the Commonwealth to establish

in testing suspects' blood alcohol concentrations ("BAC"). This flawed approach afflicts not only this case, but all future cases as well.

Because the Majority's analysis facially contravenes an unambiguous statutory provision, I must respectfully dissent.[3]

**I.**

Section 3802 sets forth several categories of DUI offenses. For those classes of offense that are premised upon a suspect's BAC percentage—the so-called "*per se*" DUI offenses, *see* Maj. Op. at 1—the statute requires that such measurements be taken "within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(2), 3802(b), 3802(c); *see also id.* § 3802(e) (relating to minors), 3802(f) (relating to commercial or school vehicles). But the statute's two-hour window is not hopelessly rigid. An exception is set forth in Subsection (g), entitled "Exception to two-hour rule." That subsection provides:

> **(g) Exception to two-hour rule.**--Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is *sufficient to establish that element of the offense* under the following circumstances:
>
> > (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
> >
> > (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance

---

its requirements. *See* 75 Pa.C.S. § 3802(g)(1) ("where the Commonwealth shows . . ."); 3802(g)(2) ("where the Commonwealth establishes . . .").

[3] For the reason set forth in Part II, *infra*, I would affirm the order of the Superior Court on grounds distinct from those articulated by the Majority. I thus concur only in the result.

> between the time the individual was arrested and the time the
> sample was obtained.

*Id.* § 3802(g) (emphasis added).

Subsection (g) does not state that BAC evidence taken more than two hours after a suspect's operation of a vehicle may be "related back" to establish the suspect's likely BAC during the two-hour window. To import this framework into this case is to add a wholly superfluous complication. Where both prongs of the exception are met, the untimely measurement is itself "sufficient to establish" the BAC element of an offense. *Id.* We need not craft extra-statutory mechanisms by which to fit belated BAC test results into the two-hour window, because Subsection (g), when satisfied, effectively *enlarges* that window.

The point is perhaps best made by illustration. Set aside the factual dispute as to when the accident in this case occurred, and assume that the evidence of Michelle Starry's BAC percentage was, in fact, acquired more than two hours after she last operated her vehicle. Further suppose that the Commonwealth established both prongs of the exception, *i.e.*, that there was good cause for the delay, and that Starry consumed no additional alcohol between the time of her arrest and the time of testing. Pursuant to Subsection (g), Starry's BAC of .304% is, at that precise moment in time, "sufficient to establish" the corresponding element of the offense at issue. 75 Pa.C.S. § 3802(g). That is, such evidence demonstrates that Starry's BAC is .16% or higher, in violation of 75 Pa.C.S. § 3802(c). This is true notwithstanding that the testing occurred beyond the two-hour window; such is the very purpose of Subsection (g). Nothing need be related back to anything. Provided that the Commonwealth establishes the applicability of the exception, the evidence is sufficient, and the analysis concludes.

Eschewing this straightforward application of the DUI statute, the Majority replaces the good-cause exception of Subsection (g) with a purely judge-made paradigm of "weak"

and "strong" inferences, by which belatedly ascertained BAC evidence may circumstantially establish a suspect's BAC level during the two-hour window, perhaps with the aid of an expert opinion, but perhaps not.  *See* Maj. Op. at 10-12.[4]  The problems with this approach are evident and multifaceted.  First and foremost, as noted above, this is simply not the manner in which the statute operates.  Although the Majority correctly states that there "is nothing in Section 3802*(c)* that prohibits" a relation-back approach on its face, *id.* at 10 (emphasis added), the Majority neglects the fact that Section 3802(g) accounts for this very circumstance a mere four subsections later.  The Majority's analysis presupposes a situation in which BAC evidence is ascertained outside of the statutory two-hour window, yet obscures the fact that the Commonwealth must meet the good-cause exception in order to demonstrate that such evidence, though untimely, nonetheless establishes a necessary element of the offense.

Even if the Majority's approach were permissible under the statute, it would still be imprudent, inasmuch as it reintroduces a host of difficulties that this Court previously has identified in connection with "relation-back" analyses.  An obvious complication is that the Majority offers no guidance as to the line between a "weak" inference, for which expert testimony would be required, and a "strong" inference, which requires no aid from an expert.  My concern finds an echo in *Commonwealth v. Duda*, 923 A.2d 1138 (Pa. 2007), where we observed that, because our previous decisions had "provided little firm guidance as to when expert relation-back testimony was necessary" in a DUI prosecution, "it seemed probable that litigation over this question would inevitably follow."  *Id.* at 1143.  We noted that an array of Superior Court decisions already had revealed the difficulty that

---

[4]     Notably, for its putative "dichotomy between weak and strong inferences," Maj. Op. at 11, the Majority primarily draws upon *Commonwealth v. Modaffare*, 601 A.2d 1233 (Pa. 1992), a decision that predates by over a decade the General Assembly's adoption of the two-hour rule and the corresponding exception thereto.

lower courts faced in attempting to draw this inevitably blurry line. *See id.* at 1143 n.7. We further quoted the Attorney General's observation that, "not only courts, but 'jurors themselves became confused as drunk driving trials became a battle of competing experts testifying on complex concepts of biochemistry and human metabolism.'" *Id.* Immediately following this discussion, the *Duda* Court observed that the General Assembly, apparently "unsatisfied with this state of affairs," amended the DUI statute in a manner that "was designed to simplify DUI prosecutions by eliminating the need for expert relation-back testimony in a class of prosecutions where the police obtain a BAC reading of 0.10 within three hours of the defendant's operation of the vehicle." *Id.* at 1143.

Notwithstanding the difficulties we identified in *Duda*, the Majority opts here to superimpose an extra-statutory relation-back framework upon the DUI statute. This overlay shares the deficiency noted in our earlier precedents, inasmuch as it fails to articulate precisely when expert testimony will be required. This invites endless litigation over whether the BAC evidence in a given case raises a strong inference or a weak inference of intoxication during the relevant timeframe, and thus whether expert opinions will be necessary in order for the Commonwealth to produce sufficient proof for a conviction, or for the defense to sow sufficient doubt for an acquittal. It calls for a return to an era where a large percentage of DUI cases transform courtrooms into colosseums for dueling experts, thrusting and parrying with biochemical esoterica outside the grasp of jurors and jurists alike.[5] And, most importantly, it disregards the General Assembly's intent to dispense with such extravagant inquiries, an intent reified by the legislature's

---

[5] To be clear, I am in no way suggesting that our trial courts are incapable of managing parties' use of expert witnesses or otherwise observing the applicable Rules of Evidence. *See* Maj. Op. at 14. I am suggesting, however, that the use of experts for "relation-back" propositions is unnecessary, potentially confusing, and inconsistent with the General Assembly's intent to "simplify DUI prosecutions by eliminating the need for expert relation-back testimony" in this context. *Duda*, 923 A.2d at 1143.

adoption of *per se* DUI offenses—offenses which, as the Majority itself describes, were "designed to ameliorate difficulties associated with attempting to relate post hoc blood and breath test results back to the time of driving." Maj. Op. at 1. While the Majority acknowledges these "difficulties," it needlessly resurrects them.

Perhaps the drawbacks associated with the Majority's approach would be acceptable if we had no other option—if the statute demanded such relation-back evidence, or if it actually were necessary in order to resolve the instant case or others like it. But we have another option. Indeed, we have a command. We can apply the language of the statute, as written. In every conceivable circumstance, a BAC reading will be procured either "within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle," *see, e.g.*, 75 Pa.C.S. § 3802(c), in which case it suffices as evidence of a corresponding DUI offense, or the BAC reading will be procured "more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle," *id.* § 3802(g), in which case the Commonwealth must establish the applicability of the good-cause exception of Subsection (g), so as to enlarge the permissible timeframe. This is an either/or proposition. It accounts for all possible timing permutations. *Expressio unius est exclusio alterius.* By giving courts an express instruction as to the treatment of "evidence of . . . alcohol or controlled substance concentration more than two hours after" the suspect's last operation of the vehicle, *id.*, the General Assembly has left no room for the Majority's substitution of a relation-back approach in the place of the Commonwealth's burden under Subsection (g).

Notably, Subsection (g)'s reference to "evidence" of BAC "more than two hours after" the suspect's last operation of the vehicle belies the Majority's assertion that the substantive DUI offense is "subject to precisely *no* stated evidentiary restrictions." Maj.

Op. at 14 (emphasis in original). "Evidence" of BAC "more than two hours after" driving can refer to nothing other than a BAC reading that is *obtained* beyond the two-hour window, which is precisely the type of evidence that, the Majority holds, may be "related back" without any consideration of Subsection (g). Further, and perhaps even more clearly, the first prong of the exception demands that the Commonwealth establish "good cause explaining why the chemical test sample *could not be obtained within two hours*." 75 Pa.C.S. § 3802(g)(1) (emphasis added). In light of this unambiguous statutory language, the Majority's assertion that the DUI statute does not require *testing* within two hours, and instead sets merely a two-hour target range for relation-back evidence, could not be more plainly contravened by the language of Subsection (g). Read as a whole, Section 3802 sets forth an overarching evidentiary restriction in the form of what the statute expressly calls "the two-hour rule"—a rule that is repeated no fewer than five times in the language of the statute. If "evidence" of BAC, 75 Pa.C.S. § 3802(g), does not fall within the two-hour rule—because it was not "obtained within two hours," *id.* § 3802(g)(1)—then it falls within the "[e]xception to the two-hour rule," *id.* § 3802(g), conditioned only upon the Commonwealth's demonstration of the two factors that the Majority now deems optional.

Insisting that it has not essentially erased Subsection (g) from the statute, the Majority suggests that nothing in its opinion "either requires relation back evidence or hampers the Commonwealth's ability to proceed under Section 3802(g)." Maj. Op. at 13. Yet, following today's decision, there is no need for the Commonwealth or any court ever to consider the good-cause exception of Subsection (g).

To recognize the consequence of the Majority's analysis, all one must do is imagine any case in which the suspect's BAC is ascertained over two hours after the suspect's last operation of a vehicle. In the parlance of the statute, such a BAC is

"evidence of . . . alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(g) (emphasis added). Before today's decision, a straightforward reading of the statute gave rise to a simple inquiry: Has the Commonwealth established both prongs of Subsection (g)'s exception to the two-hour rule?

Now, with the Majority's blessing, the Commonwealth may ignore Subsection (g) altogether, and instead skip directly to an extra-statutory assessment of whether that evidence gives rise to a "strong" or "weak" inference of a sufficiently elevated BAC during the two-hour window. If this does not write Subsection (g) out of the statute, it provides, at the very least, an avenue by which to circumvent it completely, and thereby to allow all future courts and litigants to proceed as though it does not exist. Because we must construe a statute "to give effect to all its provisions," 1 Pa.C.S. § 1921(a), the Majority's interpretation is impermissible. As for the Majority's suggestion that nothing in its opinion "hampers the Commonwealth's ability to proceed under Section 3802(g)," Maj. Op. at 13, the Majority is effectively stating that its sidestepping of the statute is in no way problematic because the Commonwealth retains an option to follow the statute, if it so chooses. But statutes are not suggestions, and observing their provisions is not optional.

And the Majority does not stop there. Taking up the parties' arguments with respect to the good-cause exception *arguendo*, despite finding them "effectively mooted" by its relation-back rationale, Maj. Op. at 14, the Majority reasonably assumes that the necessity and timing of blood testing in the course of medical treatment "will turn on circumstance-dependent judgments by health professionals." *Id.* at 15. Yet, it would conclude, given Starry's "seriously impaired condition," that it was reasonable for the investigating officer to infer that medical personnel would draw her blood promptly. *Id.*

Considering that we are addressing DUI offenses, a mere description of a suspect as "seriously impaired" would appear to cast a rather wide net. Remarkably, the Majority then suggests that a "demonstrated effort . . . to meet the two-hour window" may be necessary only "[i]n cases where these types of inferences are not warranted." *Id.* This is, of course, an even further narrowing of Subsection (g). But more significantly, given the manner in which the Majority resolves the case before us, an obvious question remains: Under what circumstance would a "demonstrated effort . . . to meet the two-hour window" ever be necessary? *Id.* Before considering these "mooted" arguments, the Majority already held that the two-hour window is not an "evidentiary restriction" at all, *id.* at 14, and that BAC evidence obtained beyond the two-hour window may be related back absent any consideration of the good-cause exception. Thus, by the Majority's express rationale, there is no need for a "demonstrated effort" to test within two hours, and there is no consequence for failing to do so. Why, then, make any effort?

## II.

The Majority's approach is all the more perplexing given the manifestly reasonable grounds upon which the Superior Court based its decision. Although the Superior Court discussed the good-cause exception of Subsection (g) in the context of an alternative analysis, its primary rationale for reversal of the trial court's order was that the Commonwealth's evidence gave rise to a reasonable inference that Starry's BAC reading was ascertained within two hours of her last operation of her vehicle, rendering any consideration of the good-cause exception unnecessary. *Commonwealth v. Starry*, 196 A.3d 649, 659 (Pa. Super. 2018). It remains undisputed that the first report of Starry's accident was received at 11:49 a.m., and that her blood was drawn at 1:40 p.m. *See* Maj. Op. at 3 & n.4 (citing N.T., 7/30/2015, at 10, 13). Accordingly, Starry's "blood was drawn 1 hour and 51 minutes after the accident was first reported." *Starry*, 196 A.3d at 659.

Provided that no more than nine minutes elapsed between the accident and the first report, Starry's BAC was ascertained within the statutory two-hour window.

Although the precise time of the accident remains unknown, and we thus cannot say with certainty when Starry last had "driven, operated or been in actual physical control of the movement of the vehicle," 75 Pa.C.S. § 3802(c), the Commonwealth's burden to establish a *prima facie* case at a preliminary hearing does not demand certainties. Rather, "inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case."[6] Viewing the evidence in the light most favorable to the Commonwealth, and particularly given that the accident occurred near midday on a Sunday rather than in the middle of the night, a reasonable inference may be drawn that the accident occurred very near the time of the first emergency report, and, thus, that Starry's blood was drawn within two hours after she last operated the vehicle. Accordingly, any consideration of the good-cause exception to the two-hour rule is unnecessary. Resort to an extra-statutory "relation-back" theory is doubly unnecessary.

I would affirm the order of the Superior Court for the reason articulated in that court's memorandum. I thus concur only in today's result.

Justice Donohue and Justice Dougherty join this concurring and dissenting opinion.

---

[6] *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) (brackets and internal quotation marks omitted).